DRYBURG *v.* MERCUR GOLD MINING & MILLING CO.

CONTRIBUTORY NEGLIGENCE—ISSUE FOR JURY.

1. Plaintiff, while in defendant's employ, fell from a ladder connecting an upper tunnel with a lower one, in consequence of the removal the same morning, without his knowledge, of waste supporting one of the uprights. The plaintiff had been at work in the upper tunnel four days, and the waste had been removed by Saunders, another miner, working in the tunnel 12 feet below, under instructions of the superintendent to remove waste therefrom. Plaintiff was at work 40 feet from the ladder, and, when he fell, was going for a sledge hammer which he needed, and the only light at the ladder was his candle. *Held,* the court should have submitted the issue as to contributory negligence to the jury, under instructions defining the phrase, in view of the circumstances in evidence.

*Fellow Servants—Rule Defined.*

2. Section 1343, Rev. St. Utah, declaring: "All persons who are engaged in the service of such employer, and who while so engaged, are in the same grade of service *and are working together at the same time and place* and to a common purpose, neither of such persons being intrusted by such employer with any superintendence or control over his fellow employés, are fellow servants with each other: provided, that nothing herein contained shall be so construed as to make the employés of such employer fellow servants with other employés engaged in any other department of service of such employer. Employés who do not come within the provisions of this section shall not be considered fellow servants,"—is a definition of the phrase "fellow servants" which the legislature had the power to make. The court may explain its provisions to the jury in view of the evidence; but whether the plaintiff in this case and Saunders were working together at the time and the place of the negligence was an

essential fact the jury should have been permitted to determine from the evidence before them.

Bartch, J., dissenting.

( Syllabus by the Court.)

(Decided December 5, 1898.)

Appeal from District Court, Tooele county; A. N. Cherry, *Judge.*

Action by George Dryburg against the Mercur Gold Mining & Milling Company. Judgment for defendant, and plaintiff appeals. *Reversed.*

*M. L. Ritchie Esq.* and *Messrs. Booth, Lee & Gray,* for appellant.

*J. E. Frick Esq.* and *Messrs. Williams, Van Cott & Sutherland,* for respondent.

ZANE, C. J.

By this action the plaintiff seeks to recover damages in consequence of an injury he alleges was caused by defendant's negligence.   It appears from the evidence there was a winze in defendant's mine connecting the Ruby tunnel with a tunnel about 12 feet below; that in this winze a ladder was placed, and had been used by miners and others having occasion to pass down or up at that place for some time before the injury; that one of the side pieces to which the rounds of the ladder were attached rested upon a natural formation, and the other one upon waste; that, six days before the injury, one Saunders, another employé, and the plaintiff, were engaged in breaking ore in the lower level near the ladder; that, four days before the injury, the superintendent separated them, by putting the plaintiff to work in the upper level, about 40 feet from the winze, and they did not work together afterwards.

Saunders, who remained at work in the lower level, was afterwards directed by the superintendent to remove the waste from that level; and, in executing the order of the superintendent, he removed the support from one side of the ladder to the depth of three feet.

In prosecuting his work, it appears the plaintiff required a sledge hammer at times; that he asked the superintendent to furnish him one, which he neglected to do, and, on the day of the injury, plaintiff started to get the one which Saunders was using, and, when he stepped onto the ladder, it turned, and threw him to the bottom of the winze; that he struck first on the higher part, and fell from that the additional three feet; that the ladder had been used a considerable time for persons to pass up and down on, and it was in a dark place, and the plaintiff, from the top of the ladder, could not see the bottom of the winze; that plaintiff and Saunders could not see each other at work, after they were separated, nor could they hear each other, except Saunders, when under where plaintiff was working, could hear him pounding at times. The ladder, without any support to one of its side pieces, as Saunders left it, would necessarily turn, and would be likely to throw anyone stepping onto it. Standing there, it was an invitation to any one wishing to go down through the winze to step onto it; and those who had used it before the dirt was removed from under one side, as the plaintiff had, were less liable to examine it before stepping upon it. Under such circumstances, it was gross negligence to leave the ladder supported as it was. It further appears that plaintiff's head and leg were seriously injured; that, after lying where he fell for some time, he was carried out, and taken to a hospital, where he remained 21 days, and walked with the aid of two crutches 6 months, and still uses a cane.

The defendant insists that the plaintiff's injuries were caused by the negligence of Saunders, his fellow servant, and that, therefore, it is exempt from the payment of any damages.    There is a great difference in the decisions as to who are "fellow servants."    Some courts have given the term a wide range, while others have given a more reasonable and limited definition.    The general rule of law undoubtedly is that the master or principal is civilly responsible for wrongs committed by his agent or servant while acting about his business.    The servant is regarded as the agent of the master in performing the duties of his employment.    The principal is alike responsible for the contracts of his agent, within the scope of his authority, and the acts and omissions of his servant in doing the work he is authorized to perform.    This rule is found in the ancient Roman law, and has been a maxim of the English law for centuries.    Of the rule, Judge Thompson says it is an "obligation imposed by the law upon every member of society *so to conduct his business as not to injure others.*    With this obligation upon him, the law wisely and justly charges him with the same responsibility for acts done by the hand of another as for acts done by his own hand; and this rule of law takes form in the maxim, ' *Qui facit per alium, facit per se.*'    *    *    *    A mere statement of the rule suggests that the master will in all cases be liable for wrongs committed by his servants while acting about the business of the former through inattention, negligence, or want of skill.    *    *    *    It is a rule so plain and easy of application that it could not be made clearer by illustration."    2 Thomp. Neg. pp. 884, 885.

The first exception to the rule as above stated was announced by Lord Abinger, in the case of *Priestley* v. *Fowler*, 3 Mees. & W. 1, in 1837.    This appears to be the

first recoraed exception to the rule of *respondeat superior*, —let the principal answer. The facts of the case were that the defendant, a butcher, directed the plaintiff, his servant, to go with and take certain goods in a van conducted by another servant. The plaintiff was being conveyed with the goods when the van broke down, and the plaintiff was injured. The duty of defendant to see that the van was in proper repair, and not overloaded, and that plaintiff should be safely carried, was averred; and that defendant did not use proper care to have the van in repair, and to prevent it from being overloaded, and to carry plaintiff safely, were also averred. In his opinion, Lord Abinger said they would decide the question on general principles, and look at the consequences of the decision one way or the other, and proceeded to state that the recognition of the principle of the master's liability to the servant in that case would carry the court to an alarming extent. He then mentioned the responsibility of the principal, by his general duty, or by the terms of his contract. But whether the court intended to decide the defendant was not liable for a breach of his general duties, as he termed them, or for a violation of his contract with his servant, was not made clear. The court then proceeded to point out the alarming consequences that might follow the announcement of the principle that would be recognized by holding the master responsible in such a case. With other examples, he instances the following:

"The master, for example, would be liable to the servant for the negligence of the chambermaid, for putting him into a damp bed; for that of the upholsterer for sending in a crazy bedstead, where he was made to fall down while asleep, and injure himself; for the negligence of the cook in not properly cleaning the copper vessels used in

the kitchen; of the butcher in supplying the family with meat of a quality injurious to health; of the builder for a defect in the foundation of the house, whereby it fell and injured both the master and the servant by the ruins." In all his examples, Lord Abinger did not instance an injury by one fellow servant to another. The butcher, of whom the master may buy his meat is not a fellow servant of his gardener; nor the contractor who builds his house a fellow servant with his coachman; nor can it be said that the master's footman is a fellow servant with the chambermaid, or his butler with the merchant of whom he might buy a bedstead. It does not appear that the meaning of the phrase "fellow servant," as now understood, ever entered Lord Abinger's mind. The idea expressed in the opinion appears to be that the principal should not be held responsible to his servant for any injury to him from any defective structure, machine, instrument, or other thing sold to the master, or built or made for him by any other person, or any injury to one servant by another, whether they may be fellow servants or otherwise. *Priestley* v. *Fowler*, 3 Mees. & W. 1.

This case and *Hutchinson* v. *Railway Co.*, 5 Exch. 343, are regarded as the leading English cases on the subject; and *Murray* v. *Railroad Co.*, 1 McMillan's Law 385, and *Farwell* v. *Railroad Co.*, 4 Metc. (Mass.) 49, are regarded as the leading American cases. The latter is regarded as the leading case on the subject in this country. The action was brought by an engineer in the employ of the defendant to recover damages in consequence of the negligence of a switchman in leaving a switch open. The court said it was an action of new impressions in the court, and the question stated in the opinion is: Can one employé, for damages, in consequence of the negligence of another, recover against the common employer? The

court held that the master would be responsible to a stranger for damages in consequence of the negligence of his servant when acting within the scope of his employment, but held he would not be for damages in consequence of an injury to another servant, and, as a reason, stated the master's obligation for such injuries to his servant may be regulated by express contract, and, when there is no express contract, the master's liability to his servant must be placed on the footing of an implied contract of indemnity, and then denied there was any such implied contract. It is also said, as a reason for the exemption of the master from responsibility to his servant for injuries received in consequence of the negligence of another servant, that the servant assumes the natural and ordinary risks and perils incident to the performance of his duties, and, in legal presumption, the compensation is adjusted accordingly.

It can hardly be said that a peril caused by the negligence of a person is a natural one, nor do we think it should be regarded as an ordinary risk. The just and reasonable rule would appear to be that the servant assumes the natural and ordinary risks attending a discharge of his duties, but not such as are caused by the negligence or wrongful acts of his employer or his agents. In the absence of authority to the contrary, we think that would be the just rule. Finally, the court turns from considerations of justice to those of policy, and considers the question from that standpoint, and states that each employé, when an observer of the conduct of others, "can give notice of any misconduct, incapacity, or neglect of duty, and leave the service of the common employer who will not take such precautions, and employ such agents as the safety of the whole party may require." This suggestion can have no reasonable or just application when the

agents or servants are not performing their labor or service in the presence of or under the eye of the others.

In the case of corporations, officers or agents are selected to hire, pay, discharge, observe, and superintend the work of their employés; and, under these general agents, others, whose duties are more special and limited, are employed to oversee and direct employés. Public policy, or, in other words, the common good, requires that all classes of business shall be conducted with care and skill, so far as skill is required; and, that it may be so carried on, it is necessary that a competent person or persons should observe and superintend the work or business. The superintendence should not be left to the laborers themselves. Recklessness, imperfect production, and failure usually attend the latter course. Discussing the principle of responsibility further, the opinion says: "The master is not exempt from liability because the servant has better means of providing for his safety when he is employed in immediate connection with those from whose negligence he might suffer, but because the implied contract of the master does not extend to indemnify the servant against the negligence of any one but himself, and he is not liable in tort, as for the negligence of his servant, because the person suffering does not stand towards him in the relation of a stranger, but is one whose rights are regulated by contract, express or implied."

The great weight of more recent authority is that the right of a servant who has sustained injuries in consequence of the negligence of another servant, who is not his fellow servant, against the common master, rests upon a tort,—the failure of the master to use reasonable care; the breach of defendant's legal duty by doing a negligent act, or by failure to do an act which reasonable diligence

18 Utah 27.

and prudence require him to do. The action is based upon a violation of duty imposed by law, and not upon an implied contract of the master to indemnify his agent or servant. From the relation formed by the contract, the law often imposes a duty the violation of which is a tort for which an action will lie. When the injury results from the negligence of the employer, there can be no doubt of the liability of the latter. It is only when the injury is caused by the negligence of the employer's agent, termed a "fellow servant," that the former is exempt. The reasonable rule would appear to be that the law imposes a duty upon individuals conducting business to use reasonable care to prevent injury to others; and, if any one is injured in consequence of a breach of that duty, he may recover from the person conducting the business by himself, his agent, or servant. Of course, this cannot apply to a servant injured by his own negligence. Mr. Beach, in his discussion of the exemption of the employer from the rule of *respondeat superior*, when one fellow servant is injured by the negligence of another fellow servant, expresses the opinion that no entirely satisfactory reason for it has ever been found. Beach, Contrib. Neg. Sec. 103, p. 321.

We have reverted to the origin of the rule, and the reasons assigned for it, in order to determine the line of authority that should be followed in the absence of the statute, and that we may, in the light of such authority, interpret the statute and apply it to the facts of this case. The exception to the rule of *respondeat superior* in favor of employers was adopted by the courts. The rule was not first declared by the legislative or lawmaking power. The exception is confined to the injury of one fellow servant in consequence of the negligence of another. When the injury is not to one fellow servant by another fellow

servant of the common master, he is not exempt.   Before
the enactment defining who shall be regarded as fellow
servants, the Supreme Court of the late territory of Utah
repeatedly held that the definition did not include all the
agents and servants of the common master, but only those
employed in the same line of duty, and of the same grade
and habitually associating and working together under
such circumstances that the care, caution, and watchful-
ness of each may have an influence upon the others, pro-
motive of diligence, care, and caution with respect to their
common safety, and under such circumstances that each
may have an opportunity of observing the conduct of the
others, and of making proper suggestions to him and to
the common employer or his superintendent or proper
agent, or of avoiding injury from such negligence.    This
same rule may also be deduced from the decisions of the
courts of other states.    *Daniels* v. *Railway Co.*, 6 Utah,
357, 23 Pac. 762;  *Webb* v. *Railroad Co.*, 7 Utah, 363,
26 Pac. 981;  *Armstrong* v. *Railway Co.*, 8 Utah, 420,
42 Pac. 693;  *Railway Co.* v. *Moranda*, 108 Ill. 576;
*Mill Co.* v. *Johnson*, 114 Ill. 57, 29 N. E. 186;  *Railroad
Co.* v. *Kelly*, 127 Ill. 637, 21 N. E. 203.

In the case of *Armstrong* v. *Railway Co.*, *supra*, the
court said:  "The definitions given of the term 'fellow
servants' by the courts differ materially.   The tendency
of later decisions has been towards a narrow application
of the term.   The rule relied on by the defendant appears
to be based upon the presumption that employés with
equal authority, of the same grade, working together,
should, by their watchfulness, their suggestions, skill,
care, caution, and example, exercise an influence on each
other promotive of diligence, care, and caution in all;
that careful employés of the same grade, associated to-
gether in the performance of common duties, ought to

simulate like behavior in each other.   *   *   *   That the reason of the rule should limit its application is regarded as axiomatic.   So far as its application goes beyond this, it is unreasonable.   Therefore the rule will not prevent a recovery against the master for an injury to an employé in consequence of the negligence of a superior, or because of the negligence of an employé not so associated with the injured party as to be subject to the influence of his example, advice, care, and diligence.   While it may be reasonable to infer that men laboring together with equal authority will, by their watchfulness, their suggestions, prudence, and example, influence each other, it would be unreasonable to presume that they will so influence the men in authority over them, and to whose orders they are subject.   And it would be quite as unreasonable to require employés, by their care and suggestions and example, to stimulate and prompt caution, watchfulness, and diligence in those with whom they are not associated, when they have no opportunity of advising or of influencing them by their example of skillfulness, diligence, and prudence.   They should not be held responsible for those outside of the range of their influence."

In *Daniels* v. *Railway Co.*, *supra*, this language occurs: "However various, the decisions agree that the weight of authority is that, in order to constitute servants of one master fellow servants, within the rule *respondeat superior*, they must be engaged in the same line of work, be under the control of the same foreman, be employed and discharged by the same head of the department in which they work; that they labor together in such personal relations that they can exercise an influence upon each other promotive of proper caution in respect to their mutual safety; that they shall be at the time of the injury directly co-operating with each other in the particular

business in hand, or that their mutual duties shall bring them into habitual co-association, as that they may exercise an influence upon each other promotive of proper caution, and to be so situated in their labor, to some extent, to supervise and watch the conduct of each other as to skill, dilligence, and carefulness."

In *Railway Co.* v. *Moranda, admx.*, above cited, the court said: "In the former opinion in this case, *ubi supra*, we held that, in order to constitute servants of the same master fellow servants, within the rule *respondeat superior*, it is not enough that they are engaged in doing parts of some work, or in the promotion of some enterprise carried on by the master, not requiring co-operation, nor bringing the servants together or into such personal relations that they can exercise an influence upon each other promotive of proper caution in respect of their mutual safety, but it is essential that they shall be at the time of the injury, directly co-operating with each other in the particular business in hand, or that their usual duties shall bring them into habitual consociation, so that they may exercise an influence upon each other promotive of proper caution. We feel constrained to adhere to this ruling, notwithstanding the very ingenious and able arguments of counsel . for appellant in favor of its modification."

The general rule of law being that the principal or master is responsible to a person injured by the negligence of his agent or servant while acting about his business, and the decisions of the courts having established an exception to that rule in favor of the principal or master, when one fellow servant is injured by the negligence of another fellow servant, and it having been determined by the supreme court of the late territory of Utah, as well as other courts, that fellow servants include only those of the same grade and employed by the common principal or master,

and habitually working together under such circumstances that the care, caution, and diligence of each may have an influence upon the others, promotive of diligence, care, and caution, with respect to their common safety, and the law that must govern this case being enacted under such circumstances, we will proceed to interpret it in their light.

The statute is as follows: "Sec. 1343. All persons who are engaged in the service of such employer, and who while so engaged, are in the same grade of service and *are working together at the same time and place* and to a common purpose, neither of such persons being intrusted by such employer with any superintendence or control over his fellow employés, are fellow servants with each other; provided, that nothing herein contained shall be so construed as to make the employés of such employer fellow low servants with other employés engaged in any other department of service of such employer. Employés who do not come within the provisions of this section shall not be considered fellow servants." Rev. St. Utah. This section declares who shall be considered fellow servants, and who shall not. (1) They must be in the employ of a common employer; (2) they must be in the same grade of service; (3) they must be *working together* at the *same time* and at the *same place;* (4) they must be working to a common purpose; (5) neither must be intrusted with any superintendence or control over the other. And, to prevent misconstruction, the proviso declares that nothing in the section shall be construed so as to make the employés fellow servants with other employés engaged in other departments of service.

To make the definition more certain, it is declared that other employés who do not come within the provisions of this section shall not be considered fellow servants. Undoubtedly, the legislature had full power to make this law

defining who shall be fellow servants.    That body has unquestioned authority to abolish the exception to the general rule of *respondeat superior* in favor of the employer; to make the common master liable to one of his employés or servants for all damages to him caused by the negligence of another of his servants while acting about the business or labor the negligent servant is authorized to do, regardless of the fact that such servants are fellow servants.    The language of the section is peremptory and absolute.    From the language used we must understand that the legislature meant to be definite and peremptory. The language is that employés shall not be considered fellow servants when engaged in different grades or departments of service.    When working apart they cannot be considered fellow servants.    To be so considered, they must be *working together.*    They must be associated together when at work, so that the one can see the other at work, and know whether he is careless or otherwise, that he may avoid the danger from his careless acts, make timely and proper suggestions, and report to the common employer or other proper person, and may quit the employ in case no change is made.    They must be so associated in their labors that the care and caution of one, calculated to promote care and caution in the others, may be known to them.    To make the requirement more definite and certain, the section declares the employés must be *working together* at the *same time* and *place,* in order to be considered fellow servants.    The meaning of the word together, and the phrases *the same time,* and *the same place* often vary, in view of their application.    Individuals may, as suggested, be associated together in the prosecution of various enterprises when residing far apart; but the word "together," as connected and used in the section, will not admit of such a construction; and the

phrase *at the same time* as used in the same section, must be held to refer to the time the employés are working together, and to no other time, and the place as connected with the terms *working together*, and the phrase *the same time*, must be held to refer to the place and time the labor is being performed.

Under the evidence, can Saunders be considered a fellow servant of the plaintiff at the time of the injury? The superintendent had put them to work together in the lower tunnel six days before the injury; but, after working together two days, he had separated them, and had put the plaintiff to work in the tunnel 12 feet above the one Saunders had been left in, and 30 or 40 feet from the winze in which the ladder was, connecting the two tunnels. The winze and tunnel were dark, except as lit by the candles they were using. When the plaintiff was at the top of the winze, he could not see its bottom, and it was impossible for him, where at work, to see the tunnel in' which Saunders was at work. If, in the performance of his work, Saunders was negligent, how could the plaintiff know and avoid the effects of his negligent acts? He could not caution Saunders or report him to the superintendent. When Saunders, under the direction of the superintendent to remove waste from the tunnel, removed the waste and the support from one side of the ladder, and in effect set the trap that threw plaintiff to the bottom of the winze, the latter did not know that it had been done.

Two servants of a common master may. be at work within five feet of each other, or a less distance, and still not be fellow servants. A wall may be between them, and the one may have no opportunity of knowing how the other performs his work. In that case they are not fellow servants, in a legal sense. So, in this case, there were 12

feet of rock between the two servants. They were not directly co-operating, and had no opportunity of seeing each other when in the performance of their duties. The facts do not bring the case within the reason of the rule established by the supreme court of the late territory, or within the terms or spirit of the statute. In *Gulf C. & S. Railway Co.* v. *Warner*, 35 S. W. 364, the supreme court of Texas, in construing a statute of that state similar to ours, defining the phrase "fellow servants," said: "Third, They mustbe working together at the same time and place. While 'at' indicates nearness in time and place, it does not demand an exact coincidence as to either, but only that it shall be sufficiently so to afford the employés a reasonable opportunity of observing the conduct of each other with a view of guarding themselves against injury therefrom." This definition of the phrase "fellow servant" is, in effect, the same as the one given above.

It is argued, further, that plaintiff was guilty of contributory negligence, and that, therefore, the order granting defendant's motion for a nonsuit was not erroneous. In the performance of the work required of plaintiff, a sledge hammer was necessary at times; and, the superintendent having failed to furnish him one, it became necessary to descend upon the ladder to the lower level, to get one he knew was there; and, finding the ladder apparently in the same position it had been before when he had used it, he stepped onto it, and was thrown to the bottom of the winze and injured. Seeing the ladder there he naturally thought it was for use, and he had no right to suppose it was a mere snare. If he had known the dirt had been removed from under one of the uprights, we must assume he would not have risked his life by stepping upon it as he did. In that act we are unable to find that he was negligent. In any view, that question of fact should have

been submitted to the jury. The same may be said of the issue as to whether the plaintiff and Saunders were fellow servants. While it was the duty of the court to give the jury a definition of the phrase "fellow servants," it was for the jury to determine, from the evidence, whether the plaintiff and Saunders were fellow servants,—whether their relationship, as it appeared from the evidence, made them so. Among the facts required to exist to make the plaintiff and Saunders fellow servants were that they were working together at the same time and place.

These facts, with the others required by the law, the court should have enumerated to the jury in giving a definition of the phrase, and the court might have made the definition more particular if able to do so; but, when he had done that, he should have left the jury to find, from the evidence, whether the facts enumerated existed. Whether the plaintiff and Saunders were "fellow servants," as that term should have been defined by the court in his charge, would have been a question of fact to be found by the jury from the evidence. *Railroad Co.* v. *Kelly,* 127 Ill. 637, 21 N. E. 203; *Railroad Co.* v. *Morgenstern,* 106 Ill. 216; *Railway Co.* v. *Moranda,* 108, Ill. 576. In *Railroad Co.* v. *Morgenstern, supra,* the court said in its opinion: "The definition of fellow servants may be a question of law; but it is always a question of fact, to be determined from the evidence, whether a given case falls within that definition. Whether the deceased and Bray were fellow servants depended upon a variety of facts, which had to be proven before the jury. The inquiry would arise whether they were in the service of a common master; were they engaged in the same line of employment? were the existing relations between them of such a character, and their duties such, as to bring them often together, co-operating in a particular work?

"These, and perhaps other facts of a kindred character, were matters to be proven before the jury; and, from the facts thus proven, it was for the jury then to say whether the two servants, in the discharge of their duties, were fellows. Had appellant desired to raise the question for decision in this court whether, under the evidence, the deceased and Bray were fellow servants, it might have done so by an appropriate instruction; but, under the statute, we cannot review the evidence, and from it determine the question." In *Railroad Co.* v. *Kelly, supra,* the court said: "Whether the deceased and those in charge of the construction train were, when the accident occurred, fellow servants, was a question of fact, to be determined from the evidence. *Railroad Co.* v. *Morgenstern,* 106 Ill. 216; *Railway Co.* v. *Moranda,* 108 Ill. 576. In the last case cited, in speaking in reference to those in charge of the train and the person who was injured, it was said: "Whether they were co-operating or consociating is a question for the jury, and not one of law for the court." The question, then, being one of fact, and having been passed upon by the appellate court, the decision of that court cannot be reconsidered here."

If, at the close of plaintiff's evidence, the court finds there is no proof of a fact essential to his cause of action, the court may grant a nonsuit; but if there is any proof of the fact, or the evidence as to it is conflicting, the issue as to its existence should be submitted to the jury by the court, under proper instructions. The jurors are the judges of the credibility of the witnesses, and it is their province to draw inferences from facts proven, or others which they may take notice of as jurors, without proof, and to decide upon the weight of evidence. We are of the opinion the court erred in granting a nonsuit. The judgment appealed from is reversed, and the cause is

remanded to the court below, with directions to grant a new trial. Costs of appeal are awarded to the appellant.

MINER, J. (concurring).

I concur with the Chief Justice in that part of the opinion holding that the question of contributory negligence of the plaintiff, under the testimony, should have been submitted to the jury, and that the order granting a nonsuit was erroneous. I do not concur in the rule as to the construction of the statute with reference to fellow servants as presented in the opinion. I am of the opinion that the judgment should be reversed, for the reason given, and a new trial granted.

BARTCH, J., dissents.