## VOTA v. OHIO COPPER COMPANY.

No. 2338. Decided December 31, 1912 (129 Pac. 349).

1. MASTER AND SERVANT—INJURIES TO SERVANT—OPERATION OF MA-CHINERY—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. In an action for injuries to an inexperienced servant while assisting in moving timbers by a hoisting engine by his arm becoming crushed between a timber and the hoist drum, evidence *held* to require submission of the questions of defendant's negligence and plaintiff's contributory negligence to the jury. (Page 132.)

42 Utah 9

2. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMED RISK.
Where plaintiff, an inexperienced servant, was directed to assist
in unloading timbers from a car by means of a hoist, and his
arm was crushed by the engineer negligently drawing a timber
against the drum of the hoist when he had been directed to
lower the timber onto a truck, after it had once come to rest
to enable plaintiff to adjust the truck so as to balance the
timber, plaintiff did not assume the risk as a matter of law.
(Page 135.)

3. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS
—"SUPERINTENDENCE OR CONTROL"—"SAME GRADE OF SERVICE."
Comp. Laws 1907, section 1343, provides that all persons who
are engaged in the service of the same employer, and in the
same grade of service, and working together at the same time
and place and to a common purpose, neither being intrusted
with any superintendence or control over his fellow employees,
are fellow servants; otherwise not. *Held* that, since the term
"superintendence or control" covers every question of authority,
the term "same grade of service" does not relate to superin-
tendence or control or refer to the power of one servant to
direct or control the actions of another, but refers, instead,
to the particular kind of work or duty which the different
servants of a common master are regularly engaged in doing;
and hence, where a mucker in a mine was called to assist in
removing certain timbers from cars by means of a hoisting
engine, he was not a fellow servant of the engineer by whose
negligence he was subsequently injured. (Page 136.)

4. MASTER AND SERVANT—FELLOW SERVANT RULE—MODIFICATION.
The legislature has power to modify the fellow servant rule or
to abolish it altogether. (Page 139.)

APPEAL from District Court, Third District; *Hon. M. L.
Ritchie,* Judge.

Action by Martino Vota against the Ohio Copper Com-
pany.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*Weber & Olson* for appellant.

*King & Nibley* for respondent.

FRICK, C. J.

Appellant brought this action to recover damages for an injury to his arm which he alleges was caused through the negligence of respondent. In his complaint he, in substance, alleged that on the 1st day of February, 1910, he was employed by respondent as a mucker in its mine in Bingham Canyon, Utah; that on that day he was ordered, with five others, to go to the surface of the mine and unload some timbers from a flat car which was to be done by means of a hoisting engine in charge of an engineer and cables; that, in obedience to the order aforesaid, he, with his fellow workmen, went to the place where said timbers were to be unloaded by hoisting them to a higher level with said hoisting engine on an incline, and when hoisted were to be loaded one or two at a time on certain trucks and taken to a storage place; that while appellant was proceeding to place one of said timbers on one of said trucks, and "was performing said work according to instructions given him by the said engineer, and while the plaintiff (appellant) was using due care for his own safety, and was ignorant of any danger, the defendant (respondent) through its said engineer in charge of said work carelessly and negligently operating said engine drew said timber so being handled by the said plaintiff up to a revolving wheel around which the cable connected with said engine was drawn, instead of lowering the timber upon the truck as should have been done and thereby carelessly and negligently drew the right arm of the plaintiff into said revolving wheel, breaking and crushing the same between the elbow and the wrist, etc., to appellant's damage, etc. Respondent in its answer denied negligence on its part, and as affirmative defenses pleaded contributory negligence and assumption of risk.

Appellant testified on his own behalf, and his testimony, so far as material here, is to the effect that on the morning of the accident he was detailed with others to go to a certain place to help unload a car load of timber; that he had been in the employ of respondent only a short time, and up to that time had performed the duties of a mucker

in the mine, and had not helped to unload timbers; that the
timbers to be unloaded were on a railroad car and were to
be hoisted up an incline which was about fifteen or twenty
feet in length, and the incline was about ten feet high-
er at its upper end than the top of the car on which
the timbers were; that the timbers were about a foot
square and about ten feet in length, some a little longer than
others; that the timbers were hoisted by means of the hoist-
ing engine, and a cable at the end of which were hooks which
were fastened into the end of the timber, and, when so fas-
tened, the man on the car who fastened the hooks would give
a signal to the engineer in charge of the hoisting engine to
hoist up the timber; that, when such a signal was given, the
engineer would slowly pull up the timbers on the incline
aforesaid and in doing so the cable would pass around a
sheave wheel, which was about six or seven feet higher than
the floor on which appellant was standing, and the timbers
would be drawn up to within a foot of said wheel, sometimes
a few inches more than a foot from the wheel, and some-
times a few inches nearer than a foot of the wheel; that,
when the timbers were drawn up near said wheel as afore-
said, it was the duty of appellant to shove or place a truck
about three feet in length and of sufficient strength under
the timber, placing the same as near the center of it as pos-
sible in order to balance the same on said truck; that, when
the truck was placed in proper position, appellant would
inform the engineer, who was near and in plain sight of
him, to lower the timber, and while it was being lowered
appellant with his hand or arm would steady or guide the
same so as to place it properly on the truck, and when the
timber was in proper position on the truck the hooks and
cable would be detached from the timber, and the truck with
the timber would be pushed along by two or three other-
ers of the gang of men who were employed with appellant
to unload said timbers to the place where the timbers were
being stored by respondent; that while these men were
unloading one truck appellant and the engineer would haul
up on the incline and load another truck in the manner we

have just detailed. Appellant further testified that at the time he was hurt about six timbers or loads had been hauled up the incline, and that they all were hauled up with the front end of the timber higher than any part of it, and all were hauled up within a foot-or so from the sheave wheel; that, when he was hurt, he was placing the truck under the timber, and in doing so had his arm on or around the timber, at which time the engineer, instead of lowering the timber onto the truck, raised the same, and caught appellant's arm between the timber and the wheel, and broke one of the bones in his arm. Appellant very frankly testified that he knew that, if the timber should be raised up against the wheel, he would be hurt; that everything was open, and anyone could see what the effect would be in case his arm should remain on the timber if the timber was drawn up against the wheel. He said, however, that on that morning none of the timbers had been drawn up to the wheel and the nearest the timbers were drawn up to it was from eight to sixteen inches. One other witness testified on behalf of appellant, but his testimony did not materially differ from that given by appellant.

Upon substantially the foregoing evidence appellant rested. Respondent then moved for a nonsuit, which was denied. After this five witnesses on behalf of respondent testified, giving their version of the accident and the circumstances surrounding and leading up to it. After respondent had introduced its evidence, it requested the court to direct the jury to return a verdict in its favor upon substantially the grounds following: (1) Because the evidence, without conflict, shows that the respondent was not guilty of any negligence; (2) because the evidence shows without conflict that the injury complained of by appellant was received by him as the result of his own carelessness, negligence, and imprudence; (3) because the evidence shows without conflict or dispute that, if appellant was injured through the negligence of another, such negligence was that of a fellow-servant; and (4) because the uncontradicted evidence is to the effect that the injury was received as the result of risks

and hazards which the appellant had voluntarily assumed. The court granted the request, and directed the jury to return a verdict for respondent which they did, and judgment was duly entered thereon.

Appellant presents the record on appeal, and now insists that the court erred in directing a verdict, and in entering judgment as aforesaid. We remark that the case was submitted without argument at the May, 1912, term of this court, and an opinion affirming the judgment upon the ground that the appellant was guilty of contributory negligence as matter of law was handed down in July following. Appellant's counsel, in due time, filed a petition for a rehearing, in which they vigorously contended that we had erred in holding that under the evidence appellant was guilty of contributory negligence as matter of law. Upon the question of contributory negligence, in the former opinion, we said:

"While appellant testified that he was told to steady the timber with his arm or hand, there is absolutely no reason shown why he was required to place his hand or arm upon the timber so as to bring it in contact with the wheel in case the timber should be drawn up close to the wheel."

After again carefully reviewing plaintiff's evidence, we were of the opinion that the foregoing conclusion ought to be modified, and we therefore granted a rehearing. The cause was therefore placed on the calendar for the October, 1912, term of this court, and at that term was orally argued and resubmitted. After again carefully scrutinizing the evidence, and upon further reflection, we think the evidence is open to the construction that the engineer in charge of the engine and in handling it while pulling up the timbers in question had in fact stopped the timber at the usual place, and that the appellant had placed and adjusted the truck under it, and while in the act of steadying the timber with his arm over the top of it in the expectation that it would be lowered onto the truck, the engineer, instead of lowering the timber as he was directed to do by appellant, somewhat suddenly and without warning raised the timber contrary to

what appellant had a right to expect, and in doing so caught appellant's arm between the timber and the sheave wheel. In view of the foregoing, and in view of appellant's lack of experience in doing the work, we are of the opinion that there was some substantial evidence relative to appellant's contributory negligence which ought to have been submitted to the jury. Under such circumstances, we should not determine the question of contributory negligence as one of law, but the case should be submitted to the jury upon the whole evidence as one of fact. Our former ruling is therefore reversed, and for the reasons stated we now hold that the question of appellant's contributory negligence ought to have been submitted to the jury.

In view of our present holding, it becomes necessary now to pass upon the other grounds upon which a directed verdict was asked and granted to respondent. Respondent's contention that the evidence is conclusive that it was not guilty of negligence as matter of law cannot be sustained. If we were called on to make findings upon the whole evidence, it might well be that we should upon that question find in favor of respondent as matter of fact, but, in view of the request for a directed verdict which was granted, all that can be considered is appellant's evidence, and that must be taken as true. In view of the foregoing, the question of respondent's negligence should also have been submitted to the jury.

The contention that the injury was the result of a risk or hazard which the appellant had "voluntarily assumed" is not tenable. That question, like the one of respondent's negligence, is a question of fact for the jury. If the jury should find that the respondent was negligent, it necessarily follows that the appellant, under the evidence in this case, did not assume the risk or hazard which arose out of its negligence. The further claim that appellant's injury, if it was not the result of his own negligence, was, nevertheless, the result of the negligence of a fellow-servant, and that it should be so declared as matter of law, must be denied.

The evidence is such that under our statute (Comp. Laws 1907, section 1343) the jury could have found either that the engineer was intrusted with superintendence or control over the appellant, or they could have found the contrary. If this had been the only element in issue respecting the question of fellow-servant, it should have been submitted to the jury, with directions that, if they found that the engineer had superintendence or control over appellant while he was engaged in doing the work in question, they should find that they were not fellow-servants, and, if they found that the engineer had not, then they should find accordingly. (*Sheperd v. Railroad Co.*, 41 Utah, 469, 126 Pac. 692.) Whether the engineer had superintendence or control over the appellant was, however, not the only element to be found in determining the question of whether they were fellow-servants under section 1343, *supra*. To constitute the engineer and appellant fellow-servants within the purview of said secton, they had to be employed by a common master. and while so employed be engaged "in the same grade of service," and, further, be "working together at the same time and place and to a common purpose," and neither "being intrusted by such employer with any superintendence or control" over the other. We thus have three affirmative elements and one negative, all of which must unite in order to constitute the employees of a common master fellow-servants under our statute. In this case the engineer and the appellant were employed by a common master. They worked together at the same time and place and to a common purpose at the time of the accident. The question as to whether the engineer had control over or could direct appellant in the discharge of his duties we have seen must, under the evidence, be determined as a question of fact. The other element, namely, whether they were engaged in the same grade of service or not, must be determined as a question of law. What is meant by the phrase "the same grade of service?" In *Shepherd v. Railroad Co., supra,* the trial court, in an instruction, defined the phrase as follows:

"The term 'same grade of service' does not mean whether they earn the same amount of wages, or whether they are doing exactly similar work; *but it means whether they are on the same level so far as exercising authority over each other is concerned.*" (Italics ours.)

We refused to approve the definition in that case, and upon further reflection still refuse to do so. It is manifest that our statute, in using the phrase, "same grade of service," does not mean what is said it means in that portion of the quotation which we have italicized. The statute, as a separate and distinct element, expressly provides that when servants do not stand upon an equality with regard to the exercise of authority—that is, if one has superintendence or control over the other—they are not fellow-servants, although they may be employed in the same grade of service. The phrase "superintendence or control" covers every possible question of authority, and hence "grade of service" cannot refer to authority. The term "same grade of service," therefore, could not have been intended to refer to the power of one servant to direct or control the actions of another, but it must have been intended to refer to the particular kind of work or duty that the different servants of a common master are regularly engaged in doing—the work which they usually and habitually do in earning their wages. For example, all trainmen who are regularly engaged in operating the trains of a railroad company may be said to be engaged in the same grade of service, although those who belong to different crews may not be working together at the same time and place within the purview of the statute. Again, some of the trainmen may have superintendence or control over others. So may it be said of all those servants who are directly and habitually engaged in mining ore or coal. It cannot be said however, that a station agent or telegraph operator of a railroad company is engaged in the same grade of service with the trainmen or the sectionmen, although at a particular point of time they may all be working together at the same time and place and to a common purpose. Where, therefore, as under the provisions of our statute, serv-

ants are divided into grades of service, the statute does not mean that such a division refers to the question of authority among the servants, since that question or element is expressly provided for in another portion of the statute, and constitutes a separate and distinct element in determining whether particular servants sustain the relation of fellow-servants or not. Under the undisputed facts in this case. appellant's regular and usual employment was that of a mucker in respondent's mine. He was temporarily transferred from the mine to assist in unloading timbers from railroad cars. The engineer in charge of the engine which was used to hoist the timbers was engaged in operating the engine. The two were, therefore, not, before they came together in unloading the timbers, engaged in the same grade of service within the meaning of our statute, although they were at the time of the accident working together at the same time and place and to a common purpose.

It may be said that in one or two of the Texas cases there are some expressions from which it might be implied that the court intended to adopt the definition of the phrase "same grade of service" that we have italicized. The servants referred to in the Texas cases were, however, actually and habitually engaged in the same grade of service as that term is herein defined, so that the question here presented was not involved, and hence what the court said was not controlling in the case. If that definition should be adopted, then that part of the section which expressly excepts those servants who have authority or control over other fellow-servants from the relationship must be ignored. It is our duty to give effect to every word or phrase contained in the statute, and, if a particular element is covered by what is said in one part of the statute, other parts must, nevertheless, be given effect if it can be done, although such other parts might, under some circumstances, be construed differently. In the statute in question, therefore, while the phrase "same grade of service" under some circumstances might be said to refer to the question of authority or control by one servant over another, yet this may not be done under the statute in

question, because the question of authority or control is covered by an express provision contained in the same section. The expression, "same grade of service," therefore, must be given effect, and this can only be done by giving it the meaning we have given it. Nor can there be any legal objection to doing so. It is manifest that the legislature by adopting the statute intended to modify the common law rule applicable to fellow-servants.

The legislature had the power to do this, or to abrogate the rule altogether. The lawmaking power having acted in a matter entirely within its power the courts have no choice save to enforce the law as promulgated. No doubt the legislature intended that only those who habitually and usually are engaged in the same grade of work should come within the relationship. This seems to be reasonable, since all those it may be assumed are familiar with the character of the work and the usual dangers and risks incident thereto. The relationship was not intended to apply to one who, like appellant, for merely a temporary purpose, was transferred from his regular and usual employment to another. While no hard and fast rule can be laid down which will control in every case, yet it is reasonably clear that in this case the engineer and appellant were not engaged in the same grade of service. Moreover, if that term were restricted to the particular point of time when the accident occurs, then the phrase "working together at the same time and place and to a common purpose" would practically be nullified. From what has been said, therefore, appellant and the engineer were not fellow-servants, and the court should have so declared as a matter of law. The case, under the evidence, with proper instructions, should therefore have been submitted to the jury upon the propositions, namely, the negligence of the respondent, the contributory negligence of the appellant, and whether he had voluntarily assumed the risk or hazard in view of all the evidence in the case.

For the reasons aforesaid, our former judgment is reversed, vacated, and set aside. This opinion is hereby sub-

stituted for the former one, and is hereby declared to be the controlling opinion in the case, and will be published as the only opinion in the case. The judgment of the district court is reversed, and the cause is remanded to that court, with directions to grant the appellant a new trial, and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs on appeal.

McCARTY and STRAUP, JJ., concur.