## SHIELDS v. SILVER KING COALITION MINES CO.

No. 2954.   Decided August 1, 1917.   (166 Pac. 988.)

MASTER AND SERVANT—"FELLOW SERVANT." Two miners working on different levels in a mine are not working at the same place, and are not "fellow servants" within Comp. Laws 1907, section 1343, providing that all persons who are engaged in the service of the same employer and working together at the same time and place, etc., are fellow servants.[1]

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by George C. Shields against the Silver King Coalition Mines Company, a corporation.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Dickson, Ellis, Ellis & Schulder* for appellant.

*Evans, Evans & Folland* for respondent.

FRICK, C. J.

The plaintiff, as an employee, recovered judgment against the defendant, a mining corporation, for damages for personal injuries.   The defendant appeals from the judgment.

Counsel for defendant, in their brief, state the question presented for review in the following words:

---

[1] *Dryburg* v. *Mining & Milling Co.,* 18 Utah, 410, 55 Pac. 367; *Neesley* v. *Southern Pac. Co.,* 35 Utah, 259, 99 Pac. 1067; *Meyers* v. *Railroad,* 36 Utah, 307, 104 Pac. 736, 21 Ann. Cas. 1229; *Shepherd* v. *Railroad,* 41 Utah, 469, 126 Pac. 692; *Vota* v. *Copper Co.,* 42 Utah, 129, 129 Pac. 349.

"The sole question here presented for review   *   *   *   is:
Were the plaintiff and his coemployee Neil fellow servants
within our statute?"

The statute referred to (Comp. Laws 1907, section 1343)
reads:

"All persons who are engaged in the service of such em-
ployer, and who, while so engaged, are in the same grade of
service and are working together at the same time and place
and to a common purpose, neither of such persons being in-
trusted by such employer with any superintendence or control
over his fellow employees, are fellow servants with each other;
provided, that nothing herein contained shall be construed as
to make the employees of such employer fellow servants with
other employees engaged in any other department of service
of such employer. Employees who do not come within the
provisions of this section shall not be considered fellow ser-
vants."

Briefly stated, the facts upon which counsel's statement is
based are as follows: On the day of the accident, and for some
time prior thereto, the plaintiff was employed in the defen-
dant's metal mine in Summit County, Utah. The point in the
mine where the accident occurred is known as the Creole or
1,000-foot level. From that level an incline at an angle of
from thirty-five to forty degrees extends upwards to what is
known as the 900-foot level. The length of the incline, that is,
the distance between what is called the Creole level and the
900-foot level, is variously stated in the evidence. The plain-
tiff estimated the distance at about 120 feet, while a witness
for the defendant gave the distance by actual measurement
as eighty feet. The plaintiff was engaged at the foot of the
incline, where what is called a "turntable" is located. The
turntable was an ordinary turntable used in mines to direct
mine cars, loaded and unloaded, onto different tracks leading
into the different drifts in the mine. There was a track on
the incline in question which was used to take mine cars loaded
with ore from the 1,000-foot or Creole level where the
plaintiff was working to the 900-foot level where one Neil,
plaintiff's coemployee, was working. On the 900-foot level

there was a level space running back about twenty feet from the edge of the incline. At the rear of that space there was located what is called a donkey engine, which was operated by Neil and was used to pull loaded mine cars up from the 1,000-foot level to the 900-foot level to the point where Neil was working, and to lower empty cars down from the 900-foot level to the 1,000-foot level.

It was plaintiff's duty to receive cars loaded with ore from different parts of the mine at the foot of the incline and, by means of the turntable, to direct them on to the track leading up the incline and to attach the cable to the cars by means of which they were pulled up the incline. Neil was standing at the head of the incline, and operated the donkey engine by means of which the cars were pulled up the incline, and he received the cars at the top of the incline and directed them into the proper drifts. It was also Neil's duty to attach the empty cars to the cable, and by means of the engine and cable to lower them down to the 1,000-foot level where plaintiff was working. When the plaintiff had attached a loaded car to the cable he would signal Neil to pull it up as aforesaid, which was done. Neil, upon the other hand, would attach the empty cars to the cable and lower them down to plaintiff by means of the engine and cable. The empty cars, when placed on the track on the incline, would run down by their own weight, and all Neil would have to do was to regulate their speed, and would stop them by using the brake connected with the donkey engine. For the purpose of fixing the precise point where Neil should stop the empty cars he had made a mark on the cable, and had also wound a rag around it. When, in lowering cars, that point on the cable was reached, Neil would set the brake, and the empty cars would usually stop just before they reached the turntable which was controlled by the plaintiff. Neil, in lowering the empty cars, did not signal plaintiff, but would let them down at any time when necessary, or when it suited his convenience. It seems that both plaintiff and Neil were kept reasonably busy in handling the cars and in operating the donkey engine as before stated. At the time of the accident Neil let down an empty car, but failed to watch the

cable in order to stop the car when the mark on the cable or rag wound around it was reached, and permitted the car to go beyond the usual point, and the car struck the plaintiff, who was engaged in moving another car onto the turntable, and he was forced between the car coming down the incline and another car, and thus received the injuries complained of. While plaintiff could not see Neil at work, Neil, if he came to the brink or edge of the incline, could look down and see plaintiff. The plaintiff and Neil worked on the same shifts, went to and came from work at the same time, and received the same wage. The evidence is also without dispute that unless it can be said that the plaintiff and Neil were not "working together at the same time and place," or were not engaged "in the same grade of service," within the meaning of the statute, then we must find that they were fellow servants, since every other element which would exclude them from being so is met by the evidence.

Assuming, without deciding, that under the evidence the plaintiff and Neil were engaged in the same grade of service, the only question remaining is, Did they work together at the same time and place within the meaning of the statute? No doubt they worked at the same time, but can it also be said that they worked "together at the same place"? Counsel for appellant vigorously contend that, within the meaning of the statute, they worked together at the same time and place, while counsel for respondent as vigorously insist that they did not. The question, when are two employees of the same master fellow servants, has, in various ways and at different times, been before this court. Some of the principal cases where the rule has been stated are the following: *Dryburg* v. *Mining & Milling Co.*, 18 Utah, 410, 55 Pac. 367; *Neesley* v. *Southern Pac. Co.*, 35 Utah, 259, 99 Pac. 1067; *Meyers* v. *Railroad*, 36 Utah, 307, 104 Pac. 736, 21 Ann. Cas. 1229; *Shepherd* v. *Railroad*, 41 Utah, 469, 126 Pac. 692; *Vota* v. *Copper Co.*, 42 Utah, 129, 129 Pac. 349. While, perhaps, it is true that the only case in which the precise question in this case was considered is the Dryburg Case, and that in that case the majority of the court did not agree in what is there said, yet the principle

involved in this case has been considered in several of the cases cited, and the question of when are two employees working together at the same place, is discussed in those cases. Even though I had the disposition to do so, I cannot add much, if anything, to what is said upon the question in those cases. If, therefore, the Dryburg Case be excluded from consideration, yet, in my judgment, no one can read the decisions in the other cases cited without arriving at the conclusion that if the precise question now before us had been presented for decision in any one of those cases, it would have been held that the plaintiff and Neil did not work at the same place within the meaning of our statute, and hence were not fellow servants. Nor can we now see any escape from such a conclusion. Where, as here, two servants work on different levels in a mine, although they work "to a common purpose," as it is expressed in the statute, yet they do not necessarily work "together at the same time and place." If it were held that two employees who are working on different levels in a mine are, nevertheless, working at the same place, then may it also be held that one who is working on the first level is working at the same place with one who is working on the fourth, seventh, ninth, or any other level so long as what they do is in furtherance of a common purpose. If plaintiff and Neil were working at the same place within the meaning of the statute, then it is not easy to separate workmen so that they do not work at the same place in a mine in case they are only separated as in the case at bar. The statute must be considered and construed in the light of what the law was upon the subject when it was adopted, and when considered in that light, the words used must be given their usual and ordinary meaning. While it is not necessary that two workmen must work side by side, or come into continuous physical contact, or touch with each other in order to be working at the same place within the meaning of the statute, yet it would be straining the words of the statute beyond their ordinary meaning if it were held that two miners who are working on different levels in a mine are, nevertheless, working at the same place within the purview of the statute. We are all of one mind that, under the undisputed facts in this

case, the plaintiff and Neil were not working together at the same place in defendant's mine, and hence the district court properly held that they were not fellow servants.

In view of the foregoing it is not necessary to pass upon the further question of whether they were engaged in the same grade of service, and hence we express no opinion upon that subject.

The judgment is affirmed, with costs to respondent. ·

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.