386        SUPREME COURT OF UTAH        [April

Arrascada et al. v. S. K. Coalition Mines Co. et al., 54 Utah 386.

## ARRASCADA et al. v. SILVER KING COALITION MINES CO. et al.

### No. 3300.   Decided April 21, 1919.   (181 Pac. 159.)

1. MASTER AND SERVANT — INJURIES TO SERVANT — NEGLIGENCE. Where a mining company's employé directed to do a particular thing which might be more dangerous than what he was doing, in that he might encounter danger from above where two other employés were working, inquired of them if it was safe, receiving an affirmative answer, and not until then proceeded upward toward them, and was struck by a falling rock, the company was liable if its other employés inquired of were negligent.   (Page 391.)

2. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY. In action against mining company and employés for death of another employé struck by rock falling from above where defendant employés were working, whether company was or was not negligent in assuring deceased employé, through other employés, that it was safe above, held for the jury.   (Page 391.)

3. MASTER AND SERVANT—FELLOW SERVANTS—QUESTIONS FOR JURY. Whether miners working above a bulkhead were or were not fellow servants of a timberer working in a chute below the bulkhead held for the jury under the evidence.[1]   (Page 392.)

4. MASTER AND SERVANT—DEATH OF SERVANT—CAUSE—SUFFICIENCY OF EVIDENCE. In action against mining company for death of timberer struck by a falling rock, evidence held to justify finding that a rock struck deceased, and that it came from the top of a raise or the roof of the raise.[2]   (Page 393.)

5. TRIAL—INSTRUCTIONS—COVERED REQUESTS. The refusal of proper requested instructions was not prejudicial error, where those given were full and clear and covered every issue and every phase of the case.   (Page 394.)

Appeal from District Court, Third District, Salt Lake County; *P. C. Evans*, Judge.

[1] *Dryburg* v. *Mercur Gold M. & M. Co.*, 18 Utah, 410, 55 Pac. 367; *Miller* v. *Utah, Con. M. Co.*, 53 Utah, 366, 178 Pac. 771; *Urich* v. *Apex Min. Co.*, 51 Utah, 206, 169 Pac. 263; *Vota* v. *Ohio Copper Co.*, 42 Utah, 129, 129 Pac. 349; *Shields* v. *Silver King M. Co.*, 50 Utah 128, 166 Pac. 988; *Shepherd* v. *Railroad Co.*, 41 Utah, 469, 126 Pac. 692.

[2] *Johnson* v. *Silver King Con. M. Co.*, 54 Utah, 34, 179 Pac. 61.

Action by Vicenti Arrascada and others, by Joel Nibley, their guardian ad litem, and Carmen Arrascada, against the Silver King Coalition Mines Company, and others. From judgment against the named defendant, it appeals.

AFFIRMED.

*Dickson, Ellis & Lucas* and *Marioneaux & Beck,* all of Salt Lake City, for appellant.

*Van Cott, Riter & Farnsworth* and *E. O. Leatherwood,* all of Salt Lake City, and *W. A. Stone* of Caldwell, Idaho, for respondents.

## APPELLANT'S POINTS.

The law recognizes absolute safety is unattainable, and that employers are not insurers of the safety of their employes, and that employers are liable for the consequences, not of danger, but only of their negligence. *Fritz* v. *Electric Co.,* 18 Utah 493; *Roth* v. *Eccles,* 28 Utah 456.

The burden did not rest upon defendant to show that Breen and Allen were fellow servants of deceased. On the contrary the burden rested upon plaintiff to show that they were not such fellow servants. *Braegger* v. *Ry. Co.,* 24 Utah 391.

## RESPONDENT'S POINTS.

The proposition that a servant to whom is delegated the duty of making a place safe, warning a servant of transitory dangers, etc., is a vice-principal, is discussed by Labatt in section 1471 of volume 4 of his treatise.

This doctrine is announced by the Utah Supreme Court in the following cases: *Downey* v. *Gemini Mining Co.,* 24 Utah, at 442-3; *Trihay* v. *Mining Co.,* 4 Utah 468.

Deceased and the miners were not in the same grade of service. Even at common law, as construed by the Supreme Court of Utah before the enactment of our fellow service stat-

388          SUPREME COURT OF UTAH          [April

Arrascada et al. v. S. K. Coalition Mines Co. et al., 54 Utah 386.

ute, these men would not have been held to be fellow servants. *Vota* v. *Ohio Copper Co.*, 42 Utah 129.

WEBER, J.

The minor children of Vicenti Arrascada, by their guardian ad litem, and Carmen Arrascada, his widow, commenced this action against the Silver King Coalition Mines Company and Evelyn Allen and Howard Breen employés of the mining company for damages sustained through the death of the husband and father as a result of the defendants' alleged negligence. Judgment was obtained in the district court of Salt Lake county against the defendant Silver King Coalition Mines Company. The cause of action against Allen and Breen was dismissed during the progress of the trial. The defendant corporation appeals.

The following is a brief recital of the material facts which the testimony introduced by plaintiffs tended to prove. The defendant owned and operated the Alliance mine at Park City, Utah. On July 14 and 15, 1916, it was engaged in the construction of a three-compartment chute extending from the 900-foot level of the mine upwards to the 700-foot level. The chute was constructed of lumber and timber. The middle compartment was a manway, and the others were for the purpose of carrying ore. On July 14th the chute had been constructed to the height of about 100 feet above the 900-foot level. The top of the chute was about eight feet below the top of the raise in which the chute was being constructed. The deceased was employed by the defendant on July 14, 1916. Until he was injured the next day he assisted in the construction of the chute. As the result of an accident occurring July 15, 1916, caused by the alleged negligence of the defendant, Arrascada died on May 17, 1917. In a deposition taken before his death, and read in evidence at the trial, Arrascada testified to the effect that the miners or machine men were drilling in the ground above him and above the three-compartment chute on July 15, 1916, the day of the accident; that he had nothing whatever to do with their work; that he

never was present when they did their work; that he did not
see them drilling, but heard them working; that he never
drilled into nor examined in any way the ground at or around
the raise; that just before the accident he was in the top set
of the chute, which was lagged over, and went to get on top
of the lagging; that he had that day been ordered by the shift
boss to get on top of this lagging and nail it down before the
machine men blasted their holes; that the machine men told
him they were going to blast and to come up; that he called
up to them and asked if everything was all right, and was
told by one of them that it was; that there was a space of
some sixteen inches between the foot wall and the chute
through which he started to climb, and thus get on top of the
lagging and comply with the orders received by him; that, as
he was trying to go up so as to get on top of the three-com-
partment chute, he was hit on the head by a rock; that he
knew it was a rock because there was nothing above him but
rocks; that there was no timbering in the raise above the
chute; that when he was hit by the rock he fell backwards
into the chute; that he did not know what happened to him
after the rock hit him; that when he regained consciousness
he was inside the chute, at the bottom of it.   The distance be-
tween the lagging or the covering over the three-compartment
chute and the top of the raise was about eight feet, and it
was in the same position with respect to the top of the raise
on July 15th, a short time after the accident.   There were
three ways to get on top of the bulkhead, but it was safest to
go up on the foot wall side.   Day and night shifts were work-
ing in the raise.   Dalmer Wiley and Elmer Wood were work-
ing on the night shift as miners and machine men, their shift
beginning at about 7:30 p. m., and ending at 4 a. m.   On the
shift next preceding that during which the accident occurred
Wiley and Wood drilled six or eight holes in the top of the
raise, some of which had been completely finished on that
shift.   These holes were at the top and on each side of the
raise.   Returning to work on the evening of the day during
which the accident occurred Wiley found eighteen holes, ten
of which had been drilled by the day shift.   Wiley found

Arrascada et al. v. S. K. Coalition Mines Co. et al., 54 Utah 386.

loose rock near the holes which had been drilled by the day shift, and he picked down some large and some small pieces of rock in the vicinity of the holes on and toward the foot wall side. The ground through which the raise was then being driven was limestone that did not slack or swell. If properly sounded and picked down, it was not dangerous ground. The work of drilling in the top of the raise had the effect of jarring and loosening the ground at and in the vicinity of the holes drilled. Wiley said it was his practice to make frequent soundings and to make examinations of the holes and at points distant from the holes, covering all grounds from which rock might fall; that the drilling into the ground through which the raise extended, and particularly the work of drilling near the vicinity of the top of the raise as the same was extended on July 15, 1916, had the effect of jarring the rock loose; that, if a raise is being put up in limestone, it will always be safe from falling rock if it has been picked down in the usual way and with the usual care after blasting; that there is always more or less danger when drilling; that the danger is less if precaution is taken; that soundings must be taken from time to time as conditions require; that in this case the usual practice was to make frequent soundings, and if the ground had been sounded and picked down, it would not have caved from the top or side of the raise.

The questions raised by appellant are whether its motion for nonsuit and prayer for a directed verdict should have been granted, whether the court erred in denying its motion for a new trial, and whether there was error in refusing to give instructions requested by defendants.

It is first urged by appellant's counsel that no primary duty on the part of defendant, as master, to furnish the deceased a safe place to work, is pleaded in the complaint, and that there was no evidence of any breach of such duty. It is alleged in the complaint that it was the duty of the defendant company to exercise ordinary care to furnish a reasonably safe place of work for the deceased and to remove all rock and material in the vicinity of the top of the raise and above the chute

which was loose or likely to fall and injure the deceased while obeying the orders of the foreman, and with copious verbiage the complaint goes into all the details as to the alleged breach of duty and the claimed negligence of the mining company, and there was some substantial evidence produced by plaintiffs to sustain the allegations of the complaint.

It is insisted by appellant that the safe place to work rule has no application to this case. Assuming, though not deciding, appellant's position to be correct, that assumption would not absolve defendant from liability. **1, 2** The testimony produced by plaintiffs tended to prove that deceased was directed to do a particular thing which might be more dangerous than what he was doing, and by doing it he might encounter danger from above where Breen and Allen had been or were at work. The deceased did not rush into danger; he took the precaution of inquiring from Breen and Allen, who were above him, whether it was safe for him to proceed upward, and they, or one of them, assured him that everything was all right and that he could proceed in safety. It appears from his testimony that it was in reliance upon that assurance that he proceeded to go to the top of the chute, and that while in the act of doing so was struck by a falling rock. Under the circumstances it was the duty of Breen and Allen to inform the deceased of any apparent danger and not to induce him to believe that everything was safe. It was their duty to exercise ordinary care to prevent injury to the deceased, and, if they failed in the discharge of that duty, the jury might well find them guilty of negligence, and, as they represented the defendant, their knowledge was the defendant's knowledge, and their negligence was the defendant's negligence. Under all the circumstances it was, therefore, a question of fact for the jury to determine whether the defendant was or was not negligent with respect to the matters just detailed and whether such negligence was the proximate cause of the accident and consequent injury to the deceased.

In an elaborate argument it is contended that, even if Breen and Allen were negligent, the defendant is not liable, because they were fellow servants of the deceased. According

to the evidence of plaintiffs, the deceased was not a fellow servant of Breen and Allen, or either of them. The working place of the deceased was in the chute below the bulkhead. The working place of Breen and Allen was in the raise above the bulkhead. The deceased was doing timbering or carpenter work. Breen and Allen were doing the work of miners. In *Dryburg* v. *Mercur Gold M. & M. Co.,* 18 Utah, 410, 55 Pac. 367, it is said:

"Two servants of a common master may be at work within five feet of each other, or a less distance, and still not be fellow servants. A wall may be between them, and the one may have no opportunity of knowing how the other performs his work."

The bulkhead or the lagging on the top of the chute may well be considered as a wall separating the place of work of the deceased and that of Breen and Allen. Whether doubt was left by the *Dryburg Case,* and other early cases, as suggested by appellant, the fellow-servant question is well settled in this state by the more recent cases of *Miller* v. *Utah Con. M. Co.,* 53 Utah, 366, 178 Pac. 771; *Urich* v. *Apex Min. Co.,* 51 Utah, 206, 169 Pac. 263; *Vota* v. *Ohio Copper Co.,* 42 Utah, 129, 129 Pac. 349; *Shields* v. *Silver King M. Co.,* 50 Utah, 128, 166 Pac. 988; *Shepherd* v. *Railroad Co.,* 41 Utah, 469, 126 Pac. 692. Many cases based upon the common-law rule of fellow service and one federal case interpreting the Utah statute have been cited by defendant, but those cases have never been accepted as authority on the law of fellow service in this jurisdiction. In harmony with the trend of judicial thought, this court has interpreted        3 our fellow service statute liberally in favor of the injured. It has refused to emasculate the statute, and has construed its provisions in accordance with the manifest legislative intent to mollify the barbaric rigor of the common-law rule of fellow service.

The testimony produced by plaintiffs on the question of fellow service was contradicted by defendant. Whether deceased was a fellow servant of Breen and Allen was not shown by proof so clear and conclusive that it could be decided by the court as a matter of law. Therefore that issue was for the jury to decide.

Defendant maintains that there is no evidence that a rock fell from the top of the raise and struck the deceased. In our opinion there was evidence from which it might be legitimately inferred that a rock struck deceased and that it came from the top of the raise. One of defendant's witnesses testified that the platform or bulkhead was clear of rock and other material, and he also said that, if any rock fell, there was no place for it to fall from except from the back of the raise or roof of the raise. There was testimony tending to prove that ten holes had been drilled by the day shift, and that Allen and Breen left loose rock and material in the roof of the raise. Taking all the testimony into consideration, there was evidence of facts from which the jury might reasonably infer that deceased was struck by a falling rock, and that it came from the roof of the raise. "It is well settled that evidence of negligence need not be direct and positive. Circumstantial evidence is sufficient." *Johnson* v. *Silver King Con. M. Co.*, 54 Utah, 34, 179 Pac. 61. Where "the question of negligence may be said to be doubtful, * * * it has become elementary in this jurisdiction, as well as in many others, that the question is for the jury." *Id.* And so with all the other issues of fact in this case. As to each the testimony produced by plaintiffs and that of defendant is irreconcilable. Had the jury given credence to the testimony introduced by defendant, they could not have consistently found a verdict for the plaintiffs. Had the testimony of defendant's witnesses been credited by the jury, the irresistible conclusion must have been that Arrascada either fell down the chute accidentally without any fault of defendant or that he deliberately attempted to commit suicide. Obviously the jury believed the witnesses for the plaintiffs and rejected the testimony of defendant's witnesses. It is the province of the jury to decide and settle all controverted issues of fact. If the argument made by appellant's counsel were addressed to us as triers of fact, it would be persuasive and might be convincing, but we cannot supersede the functions of the jury without disregarding and repudiating repeated decisions of this court.

Several instructions requested by defendant were not given

394        SUPREME COURT OF UTAH        [April

by the court. The requests were properly refused. They were not correct statements of the law applicable to this case. If we were to concede that they were proper, the refusal to instruct as requested would still not be prejudicial error, because the instructions given were full and clear and covered every issue and every phase of the case. We find no error in the record.

The judgment is affirmed at appellant's costs.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.