## WOOTON v. DRAGON CONSOL. MINING CO.

No. 3284.   Decided May 16, 1919.   (181 Pac. 593.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NONSUIT—INSPEC-
   TION OF MINE. In action for injuries to mucker in mine by
   rock falling from side or roof of hole in which he was working,
   evidence of inspection by master as shown by plaintiff's tes-
   timony *held* insufficient to authorize nonsuit at close of plain-
   tiff's evidence. (Page 464.)

2. APPEAL AND ERROR—REVIEW—VERDICT. It is not within prov-
   ince of an appellate court to disturb verdict of jury in case
   where state of evidence is such that reasonable men might
   differ as to the side on which it preponderates. (Page 464.)

3. APPEAL AND ERROR—REVIEW—NEGLIGENCE. Court on appeal can
   pass on negligence only in clear cases.[1]   (Page 464.)

4. TRIAL—PROVINCE OF JURY—INFERENCES FROM EVIDENCE. It is
   solely the function of the jury to weigh the evidential effect of
   facts before it and to deduce such legitimate inference as those
   facts afford.[2]   (Page 465.)

5. MASTER AND SERVANT—ASSUMPTION OF RISK—NEGLIGENCE OF
   MASTER. Mucker in mine injured by rock falling from side or
   roof of hole in which he was working *held* not to have assumed
   risk of injury when his only protection from danger lay in care
   and precaution of master in inspecting and scaling loose rock.[3]
   (Page 465.)

6. APPEAL AND ERROR—LAW OF THE CASE—UNCHALLENGED INSTRUC-
   TION—STATUTE. In an action for injuries to mucker in a mine,
   an erroneous instruction that lessee of mine was an independent
   contractor ignored by the verdict will not become the law of the
   case so as to cause a reversal in view of Comp. Laws 1917,
   sections 6622, 6968, relating to disregard of errors not affecting
   substantial rights of parties. (Page 466.)

7. MASTER AND SERVANT—INDEPENDENT CONTRACTOR—LESSEE OF
   MINE—CONTROL BY MASTER. Under contract with owner of mine
   to mine ore at stated sum per ton under owner's "direction and
   supervision," owner to furnish tools and air and lessee to fur-

---

[1] *Davis* v. *D. & R. G. R. R. Co.*, 45 Utah, 1, 142 Pac. 705.

[2] *Arrascada* v. *Silver King Coalition Mines Co.*, 54 Utah 386,
181 Pac. 159; *Johnson* v. *Silver King Con. Min. Co.*, 54 Utah 34,
179 Pac. 61; *Miller* v. *Utah Con. Min. Co.*, 53 Utah, 366, 178 Pac. 771.

[3] *Miller* v. *Utah Con. Min. Co.*, 53 Utah, 366, 178 Pac. 771; *Urich*
v. *Min. Co.*, 51 Utah, 206, 169 Pac. 263; *Andrews* v. *Free*, 45 Utah,
505, 146 Pac. 555.

nish labor and supplies, and in view of the subsequent performance whereby only one lessee was left working, and he was put on the pay roll of owner at daily wage, and was put under direction of mine superintendent who directed when and where to mine the ore, *held* that lessee was not an independent contractor. (Page 469.)

8. MASTER AND SERVANT—"INDEPENDENT CONTRACTOR." An independent contractor is one who exercises independent control over the mode and method by which he produces the result demanded by the contract. (Page 470.)

9. EVIDENCE—EXPERT TESTIMONY—KNOWLEDGE—CARE — MINES. A witness to be competent as an expert to testify as to care which should be used in sounding and scaling loose rock in side or roof of a hole in a mine after blasting, in absence of local peculiarity, need not be acquainted with the condition of the particular hole in question. (Page 472.)

10. EVIDENCE—EXPERT TESTIMONY—QUESTION—CONCLUSION. In action for injuries to mucker in a mine from fall of rock from side or roof of hole in which he was working, question to expert witness, could he determine whether rock was loose or not by sounding and by picking and making the tests usually made, *held* not objectionable as calling for a conclusion. (Page 473.)

Appeal from District Court, Fifth District, Juab County; *D. H. Morris*, Judge.

Action brought by A. Wooton, plaintiff, against the Dragon Consolidated Mining Company, a corporation, defendant, to recover damages for personal injuries. Verdict for plaintiff. Defendant appeals.

AFFIRMED.

### APPELLANT'S POINTS.

Actions of this character are based upon the existence of a status; unless the relation of master and servant existed between plaintiff and defendant on August 3, 1916, plaintiff has no claim for damages against defendant. The burden of proving the existence of that status on August 3rd is upon plaintiff. It is not discharged by proving that some weeks before or some days before, plaintiff was in the employ of

defendant. *Marshall & E. T. Ry. Co.* v. *Sirman,* 153 S. W. 405.

## RESPONDENT'S POINTS.

Under what theory could it be said that Long was an independent contractor? Independent in what? Why, he could not even leave the work one day or one hour without the company deducting that day or that hour from his time. Every detail of the work was under the control and supervision of the company. *Pottorff* v. *Fidelity Coal Mining Company,* 122 Pac. 120.

## STATEMENT OF FACTS.

In speaking of the parties as actors in the case and in the court below, we shall refer to them as plaintff and defendant. As actors in this court, they will be called appellant and respondent.

Plaintiff, in his complaint, in substance alleges that at all times in question the defendant owned and operated the mine in question, and that plaintiff was employed by defendant to work therein as a "mucker"; that defendant negligently failed to make proper inspection of the roof and walls of the place where plaintiff worked, negligently failed to scale off or remove or timber up loose rock and earth, and negligently failed to warn plaintiff of the condition of said place, and that plaintiff had no knowledge or notice of said dangerous condition; that on August 3, 1916, while plaintiff was working in said mine in the employ of defendant, a rock fell from the "side or roof of said hole in which plaintiff was then working" and inflicted upon him the injuries upon which he bases this action.

Defendant denies each and every one of the above allegations.

Defendant alleges that at the time mentioned in the complaint the said mine was in the possession of, and under the control of, lessees of defendant, and denies that plaintiff was

employed by defendant or worked in said mine for or under the control of defendant.

Further answering, defendant alleges that plaintiff's injury, if any, was proximately caused by his own negligence in going into his place of work prematurely, and without being required so to do, immediately after the firing of blasts in the raise above his place of work, and in failing to take any precaution to ascertain whether earth and rocks above him had been loosened by said blasts.

There is further answer, alleging that plaintiff assumed the risk, and that any injuries he received were caused by a fellow servant.

The evidence, of course, develops the facts of the matter in greater detail. It is not disputed that on or about May, 1916, plaintiff was employed by defendant to work in the Dragon mine, which mine was then owned and operated by defendant. Plaintiff worked in this mine largely, if not entirely, in the capacity of mucker from that time until he was injured. On August 3, 1916, while working in the mine as a mucker, he was injured by being struck by a piece of rock that fell from a place above him.

At the time of the accident the plaintiff was working in a large subterranean excavation calle the "Gloria Hole." This "Gloria Hole" was an underground room as large as the "Nephi courthouse." It was approached from the outside by means of a tunnel. In the "Gloria Hole," in the face of a cliff therein and some twenty feet or so above the floor, was the mouth or entrance of an incline "raise" or drift extending upward into the mountain on an angle of about twenty-two degrees. Ore was being mined in this "raise" or drift. As the ore was blasted or broken down it would fall from the mouth of the raise to the floor of the "Gloria Hole" directly beneath the mouth of the raise, and there make a pile of ore from which muckers loaded the cars that hauled the ore to the bins.

On the night of the accident plaintiff was working on and around this pile of ore engaged in loading cars. A rock fell from the raise above and struck the pile of ore, where it

broke into several pieces. One of the pieces of the rock struck plaintiff on the ankle.

Concerning the alleged negligence of the master, there is evidence to the effect that the rock in question came from the raise; that plaintiff was not working in the raise, but was working on the floor of the ''Gloria Hole'' below the mouth of the raise, and that his only protection from falling rock was the master's precaution in inspecting the raise and making it safe by scaling off or bracing up the loose rock therein. There is further evidence to the effect that a proper inspection of the raise would have disclosed the instability of a mass of rock as large as that which fell. There is evidence that the raise was inspected and sounded at six o'clock by a competent miner. The accident occurred after six o'clock. The evidence is conflicting as to whether another shot was fired in the raise after this inspection and before plaintiff was injured. So, also, the evidence is uncertain, if not conflicting, as to the exact time when plaintiff was injured. The jury found the issue as to negligence in favor of plaintiff.

Defendant contends that at the time of the accident plaintiff was not employed by or working for defendant, but was employed by and working for Ben Long. In support of this contention defendant offers a contract evidencing a lease of the right to mine ore given by defendant to Sutherland and Long. There is much evidence concerning this lease, proceedings thereunder, and modifications thereof. Many of the forty-eight errors assigned pertain to, or involve the effect of, this lease. Other facts will be stated in the opinion. The errors assigned will, in our discussion, be grouped according to principle invoked.

*Cheney, Jensen & Holman* of Salt Lake City, for appellant.

*Parker & Robinson* of Provo, and *Willard Hanson* of Salt Lake City, for respondent.

BRAMEL, District Judge (after stating the facts as above).

At the trial defendant, at the close of plaintiff's evidence, made a motion for a nonsuit. At the close of all the evidence defendant made motion for a directed verdict of no cause of action. In each of these motions, and in a motion for a new trial, defendant raises the points, among others, that no evidence was given of negligence on the part of the employer, and that the evidence shows that plaintiff assumed the risk.

It is argued that the rock came from the raise; that the raise had been inspected at six o'clock; that the accident occurred after the inspection; that the master fulfilled his duty, and that there is no liability. At the time the motion for a nonsuit was made only plaintiff's evidence was before the court, and it appeared therefrom that the miner, before the accident, went into the raise to inspect, and that he came down again after he had been up there twenty or thirty minutes. There is no direct evidence in this of any particular kind of an inspection. Nor, in the light of other evidence then in the record as to what actually happened, may the court presume or hold this to be evidence that a proper inspection, or any particular inspection, had been made. *Felton* v. *Bullard*, 94 Fed. 781, 37 C. C. A. 1; *Gibson* v. *Ry. Co.*, 61 Wash. 639, 112 Pac. 919; *Cunningham* v. *Ry. Co.*, 4 Utah, 206, 7 Pac. 795.

At the close of all the evidence there was evidence in the record that Waters, the miner, did make an inspection of the ordinary and usual kind, and scaled off the walls and roof of the raise at about six o'clock. But this same Waters, who made this inspection, says that, after this inspection and before plaintiff was hurt, another blast was fired in the raise. The answer of defendant alleges, and the evidence of defendant is to the effect, that plaintiff met with injury by going to his place of work prematurely and immediately after the firing of blasts in the raise. The evidence of Waters tends to make the inspection which he said he made at six o'clock an immaterial fact, because, according to his account, subsequent blasts in the raise altered conditions before the accident. The evidence upon the question of negligence is conflicting. It is not

within the province of this court to disturb the verdict of the jury in a case where the state of the evidence upon the given issue is such that reasonable men might differ as to the side upon which it preponderates. This court can pass upon the question of negligence only in clear cases. *Davis* v. *D. & R. G. R. R. Co.*, 45 Utah, 1, 142 Pac. 705.

It is solely the function of the jury to weigh the evidential effect of the facts before it, and to deduce therefrom such legitimate inferences as those facts afford. *Arrascada* v. *Silver King Coalition Mines Co.*, 54 Utah, 386, 181 Pac. 159 (decided this term); *Johnson* v. *Silver King Con. Mining Co.*, 54 Utah, 34, 179 Pac. 61 (decided this term); *Miller* v. *Utah Con. Min. Co.*, 53 Utah, 366, 178 Pac. 771 (decided this term).

The evidence in this case makes it plain that plaintiff from his place of work could not inspect the raise, and that his only protection from rock falling therefrom lay in the care and precaution exercised by the master. In this fact this case is similar to the case of *Miller* v. *Utah Con. Min. Co.*, supra. Also see *Urich* v. *Min. Co.*, 51 Utah, 206, 169 Pac. 263; *Andrews* v. *Free*, 45 Utah, 505, 146 Pac. 555. Those cases dispose of the idea of assumed risk in this case.

So far as concerns the above-mentioned points, the contention of the appellant is without merit.

The trial court instructed the jury that the lease or contract between the defendant on the one part and Sutherland and Long on the other part made and constituted Ben Long an independent contractor. No error is assigned by either party to this instruction, and it is not in question here for the purpose of direct review. But appellant contends that the rule announced or status declared in this instruction is the "law of the case" in this court, and that in reviewing the errors assigned this court must work upon the hypothesis that Ben Long was an independent contractor. Most of the errors assigned by appellant are based upon the theory that Ben Long was an independent contractor, and depend upon that theory for their merit.

The cases are in conflict as to the existence of any rule

that compels an appellate court in considering an appeal to follow as law of the case the unchallenged rulings of the lower court in that same case. If there is such a rule, it was born of dicta and tradition rather than of rigorous logic. *Armstrong's Adm'r* v. *Keith,* 3 J. J. Marsh. (Ky.) 153, 20 Am. Dec. 131, and note.

It has been held by many courts that it is the duty of the jury to obey the instructions of the court regardless of whether such instructions are right or wrong, and that a proper verdict found contrary to an erroneous instruction will be set aside on appeal. *Lynch* v. *Snead Ironworks,* 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852, and notes. California formerly so held, but the earlier decisions have been overruled and that state is now committed to a contrary doctrine. *Mining Co.* v. *Mining Co.,* 114 Cal. 100, 45 Pac. 1047; *O'Neill* v. *Thomas Day Co.,* 152 Cal. 357, 92 Pac. 856, 14 Ann. Cas. 970.

The Supreme Court of the United States refuses to allow any "law of the case" that may exist in the matter before it, by reason of any decision of an inferior court therein, to control or influence its decision. In fact, the Supreme Court of the United States has virtually declared itself exempt from any "law of the case" in this narrow sense. *Messinger* v. *Anderson,* 225 U. S. 436, 32 Sup. Ct. 739, 56 L. Ed. 1152; *United States* v. *D. & R. G. R. R Co.,* 191 U. S. 84, 24 Sup. Ct. 33, 48 L. Ed. 106. This court, in the case of *Schuyler* v. *Railroad Co.,* 37 Utah, 581, 109 Pac. 458, in the opinion of the first hearing, strongly announced that it is the duty of the jury to follow an instruction of the court regardless of whether that instruction is right or wrong. Two rehearings were granted in that case. The first opinion and the order reversing the judgment made therein were set aside, and a verdict found contrary to an erroneous instruction was allowed to stand. The three opinions are contained in 37 Utah, 581-616, 109 Pac. 458, 1025.

It is held by many courts that, where the jury returns a verdict that is proper in all respects under the evidence and upon the record, such verdict will not be set aside on appeal

on the ground that the jury disregarded an erroneous instruction in finding such verdict. 4 C. J. 1042-1043, notes and cases cited; 13 Standard Ency. of Procedure, p. 983, and notes.

In cases like this, it is said by the supporters of the "law of the case" doctrine that the idea that the judge is to declare the law and the jury is to pass upon the facts is the corner stone of our judicial system, and that any rule or practice that tends to rob the judge of any of the fullness of his authority to declare the law to the jury, tends ·to destroy the court. So long as the judge declares law—the true law—the argument may be valid. When the judge erroneously instructs the jury, it is fitting and just that such error be corrected. How corrected? That is a form—a matter of procedure. If the matter comes to an appellate tribunal with the error of the judge already corrected by a ·verdict of the jury, should the appellate court, for the sake of preserving a form, confer upon the judicial error the garb of sanctity or the boon of immortality?

The highest end for which an appellate tribunal exists is to correct the errors of lower courts, not to perpetuate them. This court would not be holding in high esteem the purpose for which it was created were it to accede to any rule that would permit errors of inferior tribunals to lessen its authority, or to burden litigants with unnecessary delay and expense.

A principle incompatible with appellant's contention is in broad and strong terms established by the statutes of this state. Section 6622, Comp. Laws 1917, provides that the court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and that no judgment shall be reversed or affected by reason of such error or defect. Section 6968 provides that no exception shall be regarded unless the decision excepted to is material and prejudicial to the substantial rights of the party excepting. In accordance with the word and spirit of these statutes, this court has held in at least half a hundred cases that it will

468        SUPREME COURT OF UTAH        [May

Wooton v. Dragon Consol. M. Co., 54 Utah 459.

not reverse a judgment because of irrelevant performances or irregularities or errors that do not result in wrongful judgment or in depriving the complaining party of a substantial right which, had it been properly exercised, might have secured a different decision. By substantial right is meant a right that is a part of or a factor in the justice of the case as distinguished from a matter of unessential form or an immaterial matter.

In this particular case, let it be conceded that it was the duty of the jury to follow the instruction of the court, be that instruction right or wrong. Let it be assumed that the court gave to the jury an erroneous instruction, and that the jury disregarded the same and, contrary thereto, returned a verdict which according to the case presented is, in the justice of the matter, a just and proper verdict. Does not this come fairly within the statute? More than this, is not this a typical instance of an error, or two errors, that did not prejudice substantial rights? We are of the opinion that it is.

The contract or lease is a part of the evidence presented to this court in this appeal. We are of the opinion that we are free to examine the same and reach such conclusions as to the legal effect thereof as our deliberations may justify.

The contract in question is dated April 21, 1916, and is between Alex Sutherland and Ben Long, parties of the first part, and Dragon Consolidated Mining Company, party of the second part. It recites that the party of the second part is owner of the mine and desires to have ore mined. By the express terms of the contract Sutherland and Long agree to mine ore under the "direction and supervision" of the second party at such places, at such times, and in such quantities, as the second party shall direct, and place said ore in the company's bin. Sutherland and Long agree to furnish their own powder, fuse, caps, supplies, and labor. The second party is to furnish tools and air. The contract provides that the work shall be done in such manner only as is usual and customary in skillful and proper mining operations of a similar character, and "according to ap-

proval of second party." Sutherland and Long agree not to injure the mine, and to hold second party harmless from all suits, claims and demands. Second party may terminate the contract at any time on notice. Sutherland and Long are to receive sixty-five cents per ton for ore mined.

On the face of the writing, it is manifest that a typical case of an independent contractor is not presented. The control reserved to the owner covers all details of the work, including "direction and supervision" as to times, places and quantities, and "approval" of methods employed. The owner may enforce its will, wish, or opinion by terminating the contract. The owner reserves another hold on Sutherland and Long. It may call upon them for protection against claims and demands arising against the owner or its property. Upon the face of the contract, it would be as easy to show that Sutherland and Long were working for the second party at a wage of sixty-five cents per ton as to show that they were masters of the means, method, or manner by which the work was to be accomplished.

Some additional light may be thrown upon the relationship existing between the company and Long by examining the performances that took place under, and collateral to, this contract.

After some work had been done under the contract, Sutherland quit and left Ben Long to work alone. In getting out the ore Long was under the direction or control of the superintendent of the mine, who gave orders as to where ore should be mined and how much should be produced. The superintendent and, to a certain degree, the shift boss "saw to it" that the work was done according to correct methods of mining. The superintendent approved the work and saw that it was done "carefully and right."

Some time before the accident, Long became discouraged and was about to quit, and the company made a new arrangement with him to the effect that he should be guaranteed a minimum of four dollars per day for his wage or profit, and that if he did not make enough beside to pay his men the company would pay the difference. After this new arrange-

ment was made, Long's name was put upon the pay roll of the company and he was given a number, as were other employés, and his pay was for the time he worked. However, there was a book account of some nature kept of the "iron contract," and the men in the "Gloria Hole," including plaintiff, seem to have worked for the company and on the "iron contract" in turns for some time prior to the accident. For instance, the shift boss says that he "borrowed" plaintiff from Long two days in August.

According to all the books and authorities, an independent contractor is one who exercises independent control over the mode and method by which he produces the result demanded by the contract. Analyze the contract in question. The result or final product called for by the contract is mined ore in the bin of the company. By the terms of the contract Ben Long was under the control of defendant at every step of the work. It is difficult, if not impossible, to see or even to imagine one substantial detail of the actual work of getting out ore in which Long was independent or free from supervision or control. The contract itself stipulates that this work shall be done in such manner only as is usual and customary in skillful and proper mining and according to the approval of the defendant. This wide provision confers upon the defendant large powers in the way of directing the details of the mode and manner in which the work shall be done, and it deprives Ben Long of any voice in the matter. *Linnehan* v. *Rollins,* 137 Mass. 123, 50 Am. Rep. 287; *Railway Co.* v. *Hanning,* 15 Wall. (U. S.) 649, 21 L. Ed. 220. The authorities are practically unanimous to the effect that one is not an independent contractor unless he is vested by the contract with the right to control the mode and manner of doing the work. 1 Thom. Neg. sections 621-622; 1 Shearman & Red. Neg. (6th Ed.) 164-167; 1 Labatt M. & S. section 64; 2 Mechem, Agency (2d Ed.) 1870, 1871; 24 Cyc. pages 1546-1551; 14 R. C. L. pages 67-77; Bishop, Non-Contract Law, section 602.

We are of the opinion that Ben Long was not an independent contractor.

All errors assigned to instructions given rest upon the theory that Ben Long was an independent contractor and that plaintiff was working for Long. These exceptions are disposed of in what has been said concerning the status of Long. The same statement applies to the exception to the ruling of the court permitting plaintiff to answer the question, "How long did you continue in the employ of the defendant company?"

Another error is assigned to a ruling of the court permitting a witness to answer a question over the objection of defendant. This assignment deserves some consideration. Baxter, a witness for plaintiff, and a miner of thirty years' experience in the Tintic country, in which the Dragon mine is situated, and who had worked in the Dragon mine for a period of fifteen months, covering a time at or shortly prior to the time of the accident, and who was familiar with the formation and rock in the "Gloria Hole," after having given evidence to the effect that ordinarily the miner and not the mucker makes the inspection, and that the inspection consists of picking down loose material and sounding the face to see if it is solid, and that such inspection would disclose loose rock, was asked the following question by counsel for plaintiff:

"Q. What would you say as to whether or not an experienced, competent miner could determine by sounding or picking in a formation such as this 'Gloria Hole' was, and is, as to whether or not a quantity of approximately 200 pounds was loose or not—what I mean is, could he determine whether or not that was loose or not by sounding and by picking, and making the tests that usually the ordinary miner would make?"

Objection was made on the ground that the question is incompetent and immaterial and calls for a conclusion, and that no proper foundation for it had been laid.

The evidence of Wooton then in the record was that the rock fell from the incline, that it weighed 200 or 300 pounds, and that it broke when it struck the pile of ore.

It is insisted that Baxter was not qualified to answer the question, because it was not shown that he was familiar with the formation in the incline itself. Throughout the whole

472          SUPREME COURT OF UTAH          [May

Wooton v. Dragon Consol. M. Co., 54 Utah 459.

trial the name "Gloria Hole" seems to have been used in referring to the general place in question. The incline was in the "Gloria Hole." Baxter said he was acquainted with the formation in the "Gloria Hole." We think he was qualified to answer the question. And here we suggest that we do not think that the qualification of the witness, in the absence of some suggestion of local peculiarities, depends upon his knowledge of the particular raise in question. If so, logic demands that we proceed one step farther and require knowledge of the particular spot from which the rock fell, or of the rock itself at the time it fell. He was testifying as to the efficacy of a general method of finding loose rock in a mine. There is no suggestion in the evidence, or in the argument, that the rock in the Dragon mine was of a kind peculiar to that mine, or that it differed in sounding quality from rock in general.

Opinion evidence is admitted in some cases, if not in all cases, as a matter of necessity. It is in such cases the best evidence the nature of the subject-matter affords. Chamberlayne, Ev. section 1982; 17 Cyc. 40-45. The question of fact at issue in this particular case was whether or not there was any method by which the looseness of a rock hanging in a mine could be discovered. The jury could not pass upon that question without the aid of evidence of some kind. The best evidence might be a view of the rock at the instant prior to its fall or immediately after the blast, or sounding it in the presence of the jury; but such evidence never was obtainable. The best evidence of whether a person was or was not permanently injured by an accident would be an examination made some years after the accident; but the court cannot wait. As a matter of necessity, it admits opinion evidence to show the permanence of the injury. In this case, per necessity, the best evidence of the fact as to whether or not the looseness of the rock could have been discovered before the rock fell was an opinion from an expert as to what sounding would discover.

The question put to Baxter may lack perfection of form, but in substance it asks for his opinion as to whether or not

sounding, picking, and the usual tests would disclose the looseness of a 200-pound rock. The words "usual tests" may be disregarded as repetition or surplusage. Baxter had testified that rock is sounded to see if it is solid, and that the loose rock is picked down. That seems to be all the test there is. The miner Waters later testified that he inspected the place by picking down loose rock and then sounding. *Coal Co.* v. *Berberich,* 94 Fed. 329, 36 C. C. A. 364; *Roraback* v. *Pennsylvania Co.,* 58 Conn. 292, 20 Atl. 465, 2 Jones, Com. on Evidence, section 375; 3 Wigmore, section 1976, and note. The question proposed was one which called for an answer based upon the knowledge of the witness as an expert—upon his knowledge of the efficacy of sounding rock—and it did not call upon him to make or state any conclusions drawn from any comparisons of disputed facts, nor did it usurp any function of the jury. *McCarthy* v. *Duck Co.,* 165 Mass. 165, 42 N. E. 568. Here the difference between the principle announced in the case of *Allen* v. *Railroad Co.,* 7 Utah, 239, 26 Pac. 297, and the principle applicable to this case becomes apparent. The question put to the witness in the Allen Case was: "State whether or not, in your opinion, * * * if the car had been thoroughly examined, * * * the defect in the round which gave way would have been discovered?" As the court in that case points out, the words "thoroughly examined" in the relation in which they are placed contain much food for thought, leave much room for speculation, and afford a wide margin for uncertainty, and in the end leave the witness free to imagine any kind of an undisclosed inspection he prefers and say yea or nay. But suppose the evidence in the Allen Case had shown that one method of testing for loose rungs was by tapping them, and that the question put to the witness had asked if tapping would disclose looseness. This would have called for proper opinion evidence. *Faulkner* v. *Min. Co.,* 23 Utah, 437, 66 Pac. 799; 3 Wigmore, section 1976, and note; Lawson, Expert, Evidence, 72-122; 17 Cyc. 64 et seq. We see no merit in this exception.

Judgment affirmed.   Costs to be taxed against appellant.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.