MAIER v. GRAND RAPIDS & INDIANA. RAILWAY CO.

1. FIRES—RAILROADS—ORIGIN OF FIRE QUESTION FOR JURY.

In an action against a railroad company for damages to plaintiff's buildings by fire claimed to have been caused by a spark from defendant's locomotive, where there was testimony that soon after the train passed the roof of plaintiff's house was discovered to be on fire and that the wind was blowing from defendant's track towards the house, the question as to the origin of the fire, under all the circumstances shown, was for the jury.

2. SAME.

Where the jury had before them all the facts and circumstances attending the passing of defendant's train and the fire which followed shortly thereafter, it was for them to exercise their judgment as to whether a live cinder or unconsumed fragment of coal filled with tar could and did travel 180 or 190 feet, which was the shortest possible distance it would have to travel.

3. SAME—AS TO WHETHER ENGINE PROPERLY EQUIPPED QUESTION FOR THE JURY.

Although plaintiff introduced no direct testimony controverting defendant's testimony that the engine was in good order and properly screened and managed, which, irrespective of the origin of the fire, is a complete defense under 2 Comp. Laws 1915, § 8305, where there was testimony as to facts and circumstances from which adverse inferences might be drawn, the question as to whether the engine was properly equipped was for the jury.

4. APPEAL AND ERROR—REQUESTED INSTRUCTIONS COVERED IN GENERAL CHARGE.

Where the substance of defendant's requests to charge was covered in the charge as given, which fully and impartially submitted to the jury the issues involved, there was no error in refusing said requests.

Error to Kent; Perkins (Willis B.), J.    Submitted

As to the effect of presumption from the fact that fire was set by a locomotive to carry question of negligence to jury, see note in 5 L. R. A. 99.

January 26, 1922.   (Docket No. 93.)   Decided October 2, 1922.

Case by Ludwig Maier against the Grand Rapids & Indiana Railway Company for the negligent burning of plaintiff's buildings.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*E. M. Davis*, for appellant.

*Lombard & Atkinson*, for appellee.

STEERE, J.   Plaintiff recovered a verdict and judgment against defendant of $4,136.86, for negligently causing the destruction of his residence and outbuildings by fire escaping from its locomotive.   Plaintiff with his wife owned and lived upon 40 acres of land at a station upon defendant's line about six miles south of Grand Rapids named Fisher.   It is a small hamlet of one or two stores, a pickle factory, defendant's station and a number of residences located comparatively near.   Defendant's line runs north and south at that point and is crossed by an east and west highway. Plaintiff's residence with its outbuildings stood on a corner formed by the north line of the highway and east line of defendant's right of way near the highway and about 170 feet from defendant's main track, close east of which were a passing track and a side track to the pickle factory located on the east side of the railroad nearly opposite the station and considerably further north of the highway than plaintiff's residence.   Just before noon (at 11:52) of October 3, 1920, a northbound passenger train of defendant drawn by its locomotive No. 9560 passed through Fisher without stopping, running at a speed of 50 miles an hour.   The day was warm for that time of the year with the sun shining and the wind blowing from the west.   About 12:15 thereafter a neighbor

named Buist, while eating his dinner sitting at the table, facing east towards plaintiff's house, noticed through the window that the roof was on fire. The flame was then, as he described it, near the center of the south half of the west side of the upright roof and "about the size of a half bushel basket extending about one foot high." He and his brother ran out, gave an alarm and attempted with plaintiff and others who responded to put out the fire by getting upon the roof with a ladder and passing up pails of water which they threw upon it. Failing in their efforts to stop its progress, they then rescued what effects they could from the burning building. Fire was soon communicated from the house to a cobbler shop and a wagon shed standing east and north of it which were also destroyed. The testimony is undisputed that the wind was in the west that day blowing from defendant's tracks towards plaintiff's house, and carried the smoke and cinders from the burning buildings in a northeasterly direction, but more to the east than north. Records of the weather bureau at Grand Rapids showed the wind varying from south to west the night before, and on that day a west wind from 9 until 3, of which the observer testified that if not over $22\frac{1}{2}$ degrees north of east it would be recorded as west, that its general direction on that day was from the west with a general velocity of 7 miles per hour, reaching 10 miles at 11 o'clock and later decreasing to 7 or 8 miles. Alleging the fire was caused by a spark from defendant's locomotive, the declaration charges negligence in failure to equip the same with proper preventing devices and failure to "have the machinery, smoke-stack, smoke-screen and fire boxes of its engine in good order and properly managed," etc. Defendant made denial by a plea of the general issue. Its many assignments of error were properly saved for review by objections,

motions, requests and exceptions, which need not be detailed.

It is first contended that a verdict should have been directed for defendant for the reason that more than one possible cause of the fire was shown and its origin was purely conjectural with no competent evidence to sustain the speculative verdict of the jury that the fire was started by a spark from defendant's locomotive.

Plaintiff's residence had two chimneys, one in the upright of the house which served the furnace by which the house was heated and one in the wing for the kitchen range. The weather was warm and the furnace not in use. A light fire was built in the kitchen range by plaintiff in the morning when he got up for his wife to prepare breakfast by. It was built of chips and light wood. He also put in a little Pocahontas coal not later than 8 o'clock. After breakfast he shut the front and back drafts of the range. It was carried out during the fire and no one testified to seeing any smoke or fire in it. Five of the witnesses who helped carry it out with their bare hands said it was merely warm. Others who took hold of it in other places testified it was too hot for their bare hands. A woman who testified she carried out in her bare hands the stovepipe which connected with the range said it was not hot. The prevailing testimony is that the wind was blowing to the east and northerly, some witnesses testifying it carried the smoke and cinders northeast. There is no testimony that it blew to the south of east. To ignite the fire where first seen a spark from the kitchen chimney would have to go in a southeasterly direction.

In submitting the question of the origin of the fire to the jury the court instructed them as to defendant's claim of two probable sources from which the fire might have originated in part as follows:

"If the testimony establishes no more than the fact that the fire in question might have been set by this particular engine, it is not sufficient under the rule I have given you, to establish the fact based on reasonable probability that the engine did set the fire. The jury is not permitted to base its conclusion upon mere conjecture or speculation. The evidence to establish the fact in question must be clear and convincing and preponderate against the defendant. * * * There has been no proof in this case of any other source from which a fire could have originated except from the stove in the kitchen of plaintiff's house and this locomotive. It is for you to determine from all the facts and circumstances in the case as to whether or not that stove was the probable cause of this fire, or whether or not the engine, or a spark from the engine, was the probable cause of the fire. In other words, Is it more probable that the fire came from the stove than from the engine? If so, and you so find, the plaintiff cannot recover."

There was testimony, most of it undisputed, that when the train passed through Fisher on that day without stopping it was running at least 50 miles an hour and the engine, which burned 4½ tons of coal between Fort Wayne and Grand Rapids, was puffing. It was 12 minutes late at Fisher and only 5 or 6 minutes late at Grand Rapids; the day was clear and warm with low humidity, shingles on the upright of plaintiff's house where the fire started were old, somewhat curled and split, and the wind was blowing from defendant's track toward the house; within a short time after the train passed a fire was discovered of the size stated and while the building was burning cinders carried from it were found over a mile to the east and north of the fire, and shocks of corn between there and the burning building were set on fire by them. Taking the testimony in its most favorable aspect, as is the rule when a directed verdict is requested, it was for the jury to determine from all the

circumstances shown whether the fire was started by a spark from defendant's locomotive.

It is further contended that a verdict should have been directed for defendant on the ground plaintiff failed to show that a moving engine would throw live sparks 180 or 190 feet, claimed to have been the shortest possible distance as the wind was then blowing. A witness named Roost of 30 years' experience in railroading, 21 of them as an engineer, who testified that he had heard of fires started by locomotives at 300 or 400 feet from the track but had no personal knowledge of their doing so as far as 180 feet, also said: "Some pieces of material unconsumed that long are filled with tar; heaven knows where they might stop." The jury had before them all the facts and circumstances attending the passing of defendant's train and the fire which followed shortly thereafter upon which it was for them to exercise their judgment as to whether a live cinder or unconsumed fragment of coal filled with tar could and did travel that far. In *Budd* v. *Railroad Co.*, 200 Mich. 250, it was held to be a question for the jury where the shortest distance between a passing locomotive and the fire which followed was 453 feet.

It is further claimed that a verdict should have been directed for defendant on the ground that it showed by uncontroverted testimony the fire prevention devices of the locomotive were in good order and it was properly managed which, irrespective of the origin of the fire, is a complete defense under the provisions of section 8305, 2 Comp. Laws 1915. The screen upon that engine had been in use 4 years. It appeared that the life of such screens in active service is from 3 to 6 years. A screen identified as in the engine on that run was introduced in evidence and defendant's boiler foreman testified it was in good order then, and on the day of the fire, as did also

other inspectors and experts called by defendant. The engineer and fireman of the locomotive on that run testified that it was properly operated. Plaintiff produced no direct testimony to the contrary, though contending there were certain facts in connection with defendant's testimony from which adverse inferences could be drawn. These need not be discussed beyond the testimony of defendant's experts, as well as plaintiff's, that a locomotive properly equipped, in good order and properly managed, would not set fire at a distance of 180 feet.

In the *Budd Case* it was said and held:

"In *Potter* v. *Railway Co.*, 157 Mich. 216 (22 L. R. A. [N. S.] 1039), we held that where the defendant offered testimony tending to show that the engine was in good order and properly managed which was not directly controverted, where expert witnesses gave evidence tending to show that an engine in good order and properly managed would not throw sparks across the distance claimed, a question of fact was raised for the determination of the jury."

That rule also finds support in *Union Ice Co.* v. *Railway Co.*, 178 Mich. 352; *Pennsylvania Fire Ins. Co.* v. *Railroad Co.*, 184 Mich. 375; *Stoddard* v. *Railway Co.*, 191 Mich. 321; *Michigan Mutual Home Ins. Co.* v. *Railway Co.*, 193 Mich. 429; *Tonn* v. *Railroad Co.*, 195 Mich. 645.

To the contrary of these, and as stating the true rule which should be applied in this class of cases, defendant cites *Dolph* v. *Railway Co.*, 149 Mich. 278, and *Clark* v. *Railway Co.*, 149 Mich. 400 (12 Ann. Cas. 559). While language may be found in these cases which, standing alone, gives color to defendant's contention that direct evidence showing the engine was in good order and properly managed, not disputed by any direct testimony, is conclusive and may not be inferentially controverted, each of those cases contains qualifying language and was decided on its

own controlling facts. As heretofore pointed out, in the *Stoddard Case*, it was said in *Dolph* v. *Railway Co., supra:* "If different conclusions can be drawn from conceded facts, or if the facts are in dispute, the question belongs to the jury." And in the *Clark Case:* "If upon the whole case there is room for inference, based upon evidence, that equipment was defective or that management was improper, the case is for the jury." Under the general rule as settled by the *Budd* and other cases cited, which are later than the *Dolph* and *Clark Cases,* there was room in the instant case for a legitimate inference based upon evidence that equipment was defective, which carried the case to the jury.

This case was closely tried with many objections, motions and requests, defendant having tendered 40 requests for instructions to the jury. Various assignments of error are directed to refusal to charge as requested, as well as against the charge as given. We think the fairly lengthy charge of the court fully and impartially advised the jury of the exact issues of fact submitted for their determination and the principles of law involved which should guide their deliberations, and in substance covered the essentials running through defendant's various requests. It would be profitless to review at length all the assignments of error urged. After a careful examination of them in the light of the record before us we conclude the case was fairly tried and submitted without reversible error.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.