LUDLOW v. INDUSTRIAL COMMISSION et al.

No. 4212.    Decided April 3, 1925.    (235 P. 884.)

1. MASTER AND SERVANT—WHETHER DRIVER OF TRUCK TRANSPORTING SCHOOL CHILDREN AND HIS EMPLOYER WERE EMPLOYÉS OF DISTRICT HELD NOT DETERMINED BY PAY ROLL. That one contracting to transport school children, or his driver, were or were not listed on pay roll of school district from which amount of insurance premium payable by district was computed *held* not to affect their status as employés or as independent contractor and employé of independent contractor.

2. MASTER AND SERVANT—STATUS AS INDEPENDENT CONTRACTOR NOT AFFECTED BY SUPERVISION TO SECURE FAITHFUL PERFORMANCE OF WORK. One's status as an independent contractor is not affected by employer's right to supervise and direct in matters necessary to faithful performance of contract.

3. MASTER AND SERVANT—EMPLOYER'S RIGHT TO INTERFERE DETERMINES STATUS AS INDEPENDENT CONTRACTOR. Employer's right to interfere with work being done, rather than his actual interference, determines status, as independent contractor or mere employé, of one engaged to do work.

4. MASTER AND SERVANT—INDEPENDENT CONTRACTOR CAN EMPLOY SUBSTITUTE. Independent contractor, without consent of contractee, may employ a substitute to do his work, while employé cannot.

5. MASTER AND SERVANT—ONE CONTRACTING TO TRANSPORT SCHOOL CHILDREN HELD INDEPENDENT CONTRACTOR. One contracting with school district to transport school children in his own trucks, subject only to requirement that he keep a definite schedule and comply with other rules for conduct and safety of children, and who had right to employ and discharge drivers without district's consent, *held* an independent contractor and not an employé of district, within Industrial Act.[1]

---

[1] *Callahan* v. *Salt Lake City*, 41 Utah, 300, 125 P. 863; *Dayton* v. *Free et al.*, 46 Utah, 277, 148 P. 408; *Stricker* v. *Industrial Commission of Utah*, 55 Utah, 603, 188 P. 849; *Angel* v. *Industrial Commission of Utah* (64 Utah, 105,) 228 P. 509; and distinguishing *Wooten* v. *Dragon Con. Min. Co.*, 54 Utah, 459, 181 P. 593.

See Headnote 1.  Workmen's Compensation Acts, C. J. p. 50.

Headnote 2.  Workmen's Compensation Acts, C. J. p. 50.

Headnote 3.  Workmen's Compensation Acts, C. J. p. 50.

Headnote 4.  Workmen's Compensation Acts, C. J. p. 51 (1926 Anno).

Headnote 5.  Workmen's Compensation Acts, C. J. p. 50.

Proceeding under the Industrial Act by Wilma H. Ludlow, claimant, for death of her husband Daniel Ludlow, opposed by the Board of Education of the Nebo School District, and the State Insurance Fund. To review an order of the Industrial Commission, denying compensation, claimant prosecutes a writ of review.

AWARD AFFIRMED.

*Booth & Brockbank,* of Provo, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

THURMAN, J.

On January 31, 1924, John W. Clark and Daniel Ludlow, while operating an automobile truck in the Nebo school district of Utah county, were both killed in a railroad collision while attempting to cross the track of the Union Pacific Railroad.

Clark, it appears, had entered into a contract with the board of education of said school district for the transportation of certain school children of said district to and from school, and Ludlow had been hired by Clark as the driver of one of his trucks. The dependents of both Clark and Ludlow made application to the Industrial Commission of Utah for compensation under the Industrial Act (Comp. Laws 1917, §§ 3061-3165. By stipulation of the parties the cases were consolidated, and the evidence taken in the Clark Case was also applied and used in the Ludlow Case. The Commission denied compensation in both cases, on the ground that Clark was an independent contractor and that Ludlow was employed by him and not by the school district. A rehearing was applied for in the Ludlow Case and denied. The case is before us on a writ of review.

There are but two questions presented for determination: (1) Was Clark an independent contractor or was he an em-

ployé of the school district? (2) If he was an employé of the school district, did the accident which resulted in his death occur in the course of his employment? If it be determined that Clark was an independent contractor, it will not be necessary to determine the other question; for, in such case, under the undisputed evidence, it clearly appears that Ludlow was an employé of Clark, and not of the school district, as alleged in the petition for review.

The first question therefore to be determined is, Was Clark an independent contractor of the school district? If so, the case is not within the Industrial Act, and the Commission's award should be affirmed.

It was stipulated by the parties at the hearing that the school district had procured insurance with the state insurance fund; that John W. Clark, the deceased had a contract with the board of education of the Nebo school district under which he was to be paid $3,500 a year for transporting school children to and from school, said sum to be paid in nine payments; that said deceased left a widow and dependent minor children living with and dependent upon him at the time of his death. The contract between Clark and the board of education of the district was not in writing signed by the parties, but certain entries were made in the minutes kept by the board, from which it appears that a valid contract was entered into between the parties. As the principal question turns upon the nature and terms of the contract, we here quote the minutes in full:

"Board of Education met in the office in regular session August 10, 1923, 7:30 p. m. President T. F. Tolhurst in charge. Minutes read and approved. Roll call showing all members present. Jack Clark met with the board for transportation. His offer was $3,700 per year for a three-year contract, provided the board pay federal tax. He stated larger truck was necessary and asked that the board advance $1,000 and apply $100 monthly on the amount. Also asked the board to furnish material for two garages; that Lake Shore truck be routed through Benjamin and trucks start from Benjamin, Lake Shore, and Palmyra schoolhouses. The clerk was instructed to notify Jack Clark that board was willing to enter into contract with him for. transporting pupils from Benjamin, Lake Shore, and Palmyra on the following conditions.

Certiorari

" '(1) That three starting points as follows be agreed upon: Benjamin schoolhouse, Lake Shore schoolhouse, Palmyra schoolhouse;

" '(2) That the board furnish material for garage at Lake Shore and Palmyra, Mr. Clark to do the building free;

" '(3) That Lake Shore truck be routed through Benjamin;

" '(4) That the board advance $1,000 August 15th, to make partial payment on new truck, secured by chattel mortgage for one year, to be paid in nine months payment;

" '(5) That the board pay $3,500 for said transportation in nine payments, and that the contract be for two years with $1,000 advance next September on truck, secured with chattel mortgage.' "

On August 29, 1923, the following entries appear in the minutes of the board:

"Board of education of Nebo school district met in regular session in the school office August 29th, at 7:30 p. m., 1923. President T. F. Tolhurst in charge. Roll call showing four members present. J. A. Westing excused. Jack Clark reported he would accept salary and contract as offered for transporting from Lake Shore, Benjamin and Palmyra."

No other or different contract than the one above quoted is disclosed by the record. It is true that members of the board of education of said school district, called as witnesses for the petitioner, in answer to questions calling for legal conclusions, were permitted to testify, in effect, that such and such things were in accordance with the contract, and that the contract authorized this, that, and the other. In other words, they were permitted to place their construction upon the contract and attempt by their testimony to decide the very question which was the duty of the Commission alone to determine from the facts laid before them. Neither time nor space would be profitably occupied in detailing the testimony of the witnesses in order to elucidate the character of evidence received by the Commission. We assume a few instances will be amply sufficient for that purpose. When Mr. Tolhurst, the president of the board, was on the stand as a witness for petitioner, after stating he had heard read the minutes of the board relating to Mr. Clark's employment, he was asked: "Does the contract contain all the details pertaining to Mr. Clark's employment?" He answered: "Well, except like a teacher or any other employé, he is

subject to the orders of the board." Again, the same witness was asked: "Was his employment by the board different to the employment of any other of the employés?" This was objected to by counsel for the insurance fund, as the question called for a legal conclusion. The objection was over-ruled, and the witness answered: "Well, personally, and I believe the board generally understood them to be under the direction of the superintendent and members of the board similar to any other teacher or superintendent of the board." Again, the witness was asked if Mr. Clark had independent charge. Against objection the question was allowed, and the witness answered, "Certainly not." Again, the same witness was asked by counsel for petitioner: "What were the pro-visions of the contract?" He answered: "To follow the contract and be under the supervision of the superintendent the same as any other teacher or employé of the district."

A. C. Peterson, superintendent of schools, was examined. Counsel for petitioner asked the following question:

"Was your authority over Mr. Clark, as given you by the board, the same as other employés in the district?" He answered: "So far as I understand, he was under the supervision of the board, outside of the designated time he was out of employment, and then we had nothing to do with him, except when we called him on special occasions.

"Q. Was it your right to call him on special occasions at any time in regard to work? A. On special occasions and as far as transportation. For instance, we would have a basketball game, and the principals would telephone down here and ask us to tell him to hold the truck until after the game."

The foregoing serves to illustrate the latitude allowed in examining the witnesses and the character of testimony elicited.

Certain rules published by the board and handed to Mr. Clark after the contract was entered into are relied on by the petitioner. They are of sufficient importance to quote in full in this connection:

"(1) Each truck must have a definite schedule giving the route and exact time of leaving each designated stop. This schedule must be followed so far as possible, and must be posted in a con-spicuous place in the truck. A copy of schedule must be sent to office.

"(2) Students must not be allowed to stand on fenders or out-side of truck.

"(3) As soon as students enter the trucks they are under the control of the schools, and must observe proper decorum at all times.   Boisterous conduct will not be tolerated.

"(4) The truck drivers have the same authority as the teachers of the schools in enforcing order and discipline on the road to and from school.

"(5) Trucks carrying students should not exceed 15 miles per hour.

"(6) The truck driver must run his own car and never allow students to drive or interfere with the car in any way.

"(7)   All trucks carrying students must come to a full stop at all railroad crossings.   This is a state law.

"(8) These rules must be posted in a conspicuous place in each truck."

The uncontradicted evidence shows that Clark furnished his own trucks and kept them in repair; that he furnished his own drivers and paid them for their services; that none of his drivers were on the pay roll of the district; that if the drivers, or any of them, were incompetent, or did not do their work satisfactorily, the board or superintendent might make complaint to Clark, and Clark alone had the right to discharge; that when Clark and his drivers were not engaged in transporting the children back and forth the time was his own; that on special occasions, such as basket-ball games, or other school activities in which the whole school was inter-ested, Clark was requested to hold the truck until after the game; that he was directed to pick up school children at desig-nated places along the route between the points mentioned in the contract, and that he complied with the directions; that some of the school children complained of cold in one of the trucks, and upon examination a hole was found in the car which admitted the cold; that Clark was directed to repair the car, and that he did so.

We have now made reference to the main features of the evidence material to the question presented here, except the fact that the board had procured insurance in the state in-surance fund which included eleven drivers of trucks, and it was testified by members of the board that among these eleven were Clark and his two drivers, who were the only

drivers he had. It was admitted that their names were not mentioned in the application for insurance, and that only $1,100 was given as the pay roll for truck drivers for a period of four months from September 1, 1923, to the end of the year. It was admitted, that the salary for Clark was $3,500 for nine months of the year. Some statement was made by the clerk of the board, who testified concerning the insurance, that in estimating the amount upon which the premium was to be paid one-half the salary was taken as the amount. The remainder was for the use of the trucks.

The testimony as to insurance was vague and indefinite, and the amount of premium paid was clearly insufficient, if it was intended to include Clark and Ludlow in the pay roll. This feature, however, does not appear to be of vital importance. If Clark and Ludlow were in fact employés of the district, the failure to include them in the pay roll would not affect their status as employés. On the other hand, if Clark was in fact an independent contractor, the including of his name in the pay roll would not affect his status as an independent contractor. There is no evidence whatever that there was any arrangement between Clark and the board concerning insurance, or that Clark or the insurer was conscious of insurance having been provided for Clark or his drivers. This feature of the case appears to be without probative effect, and sheds no light upon the question to be determined. Other features of the evidence of minor importance, if necessary, will be referred to later on.

What constitutes an independent contractor as contradistinguished from an employé is, often times, difficult to determine. What, in many cases, are considered satisfactory tests, in other cases, under different circumstances, are not satisfactory. For this reason it is manifest that the disposition of each case is controlled by the particular facts of such case.

The question as to what constitutes an independent contractor, under varying circumstances, has been determined by this court in the four following cases: *Callahan* v. *Salt Lake City*, 41 Utah, 300, 125 P. 863; *Dayton* v. *Free et al.*, 46

Utah, 277, 148 P. 408; *Stricker* v. *Industrial Commission of Utah,* 55 Utah, 603, 188 P. 849, 19 A. L. R. 1159; *Angel* v. *Industrial Commission of Utah,* 64 Utah, 105, 228 P. 509.

It is not necessary to review these cases at any considerable length or make lengthy quotations therefrom. The *Callahan Case,* supra, is a leading case upon the subject. It involved a contract between Salt Lake City and a contractor for the improvement of a certain street. During the progress of the work the premises of a third person were injured by flooding the basement. He brought an action against the city to recover damages. It was contended by the city that the person constructing the improvement was an independent contractor, and that therefore the city was not liable. The contract reserved the right in the city of supervision as to numerous details concerning the work. These reservations were relied on by the plaintiff as tending to show that the contractor was only an employé of the city, and that the city had complete control of the work. The court, in its opinion, however, pointed out and made clear that the right of supervision reserved only referred to such matters as were necessary to insure a result in accordance with the contract, and that this did not affect the status of the contractor. The judgment for the city was affirmed.

The *Dayton Case,* supra, is a well-considered case and refers to the *Callahan Case* as analogous. Free and one Taylor entered into a contract with the Snake Creek Tunnel Company to construct a tunnel. The contract contained limitations and conditions, especially to the effect that the contractors agreed to employ no person on the work unless such person was satisfactory to the company, and further agreed that they would upon request furnish to the company a full list of their employés and promptly discharge any man so employed at the request of the company, in case a reasonable and sufficient cause was assigned. Other conditions and limitations were imposed and reservations made. In the course of the work Dayton, the plaintiff, was injured and brought an action for damages against the Tunnel Company, Free and Taylor, and certain subcontractors under

them. Among other things the Tunnel Company, defendant, alleged that Free and Taylor were independent contractors, and that plaintiff Dayton was not its employé. The trial court sustained the contention of the Tunnel Company and directed a verdict accordingly. A verdict, however, was rendered against the other defendants, from which judgment they appealed. Plaintiff also appealed from the judgment in favor of the company. The court, in effect, held as in the *Callahan Case,* that the limitations and reservations contained in the contract did not affect the status of Free and Taylor as independent contractors, for the reason that such reservations and stipulations did not reserve to the company the right to control the method of accomplishing the work, but were intended only to insure a performance of the contract.

The *Stricker Case* and the *Angel Case,* above cited, follow in line with the cases we have reviewed, and reach the same conclusion.

The fact that the contractor employed his own employés, paid them for their services, had the sole right to discharge them, and to perform the work in his own way as long as it conformed to the requirements of the contract, were controlling features in the cases we have reviewed. In view of these cases, it would seem unnecessary to refer to cases from other jurisdictions. Counsel for defendants, however, have called our attention to many other cases in line with those above referred to. *Eckert's Case,* 233 Mass. 577, 124 N. E. 421. *Norton* v. *Day Coal Co.,* 219 Mich. 679, 189 N. W. 905; *Pace* v. *Appanoose County,* 184 Iowa, 498, 168 N. W. 916; *Sawtells* v. *Ekenberg Co.,* 206 Mich. 246, 172 N. W. 581; *Flickenger* v. *I. A. C.,* 181 Cal. 425, 184 P. 851, 19 A. L. R. 1150; *Amalgamated Roofing Co.* v. *Travelers' Ins. Co.,* 300 Ill. 487, 133 N. E. 259; *Bache* v. *Salvation Army et al.,* 202 App. Div. 17, 195 N. Y. S. 151; *Petrow & Giannou* v. *Shewan,* 108 Neb. 466, 187 N. W. 940; *Simonton* v. *Morton,* 275 Pa. 562, 119 A. 732; *Hall* v. *I. A. C.,* 57 Cal. App. 78, 206 P. 1014; *Powley* v. *Vivian & Co.,* 169 App. Div. 170, 154 N. Y. S. 426; *Gall* v. *Detroit Journal Co.,* 191 Mich. 405, 158 N. W. 36, 19 A. L. R. 1164. These cases are all in point upon the

very question presented here. The last case cited is of special interest because of the close analogy in some of its features to the case at bar. We refrain from reviewing it, however, as this opinion has already exceeded the limits which its importance demands, in view of the former decisions of the court to which we have referred.

Counsel for petitioner have cited numerous cases from other jurisdictions. Of the decisions of this court they cite only one—*Wooton* v. *Dragon Con. Min. Co.*, 54 Utah, 459, 181 P. 593. In that case the seventh headnote sufficiently reflects the opinion of the court and clearly distinguishes it from the instant case:

"Under contract with owner of mine to mine ore at stated sum per ton under owner's 'direction and supervision,' owner to furnish tools and air, and lessee to furnish labor and supplies, and in view of the subsequent performance whereby only one lessee was left working, and he was put on the pay roll of owner at daily wage, and was put under direction of mine superintendent, who directed when and where to mine the ore, *held* that lessee was not an independent contractor."

Counsel for petitioner also refer to some 50 or 60 cases and authorities which are altogether too numerous for detailed review. Such as they have deemed of sufficient importance to quote excerpts from we refer to in this connection. The following are given as definitions of an independent contractor:

"One who undertakes to produce a given result, but so that in the actual execution of the work he is not under the order or control of the person for whom he does it, and may use his own discretion in things not specified." *Gay* v. *Roanoke R. Co.*, 148 N. C. 336, 343, 62 S. E. 436, 438.

"One 'who undertakes to do specific pieces of work for other persons without submitting himself to their control in the details of the work.'" *Waters* v. *Pioneer Fuel Co.*, 52 Minn. 474, 55 N. W. 52, 38 Am. St. Rep. 564; *Cole* v. *Durham*, 176 N. C. 289, 97 S. E. 33, 11 A. L. R. 560; *Chicago, R. I. & P. R. Co.* v. *Bennett*, 36 Okl. 358, 128 P. 705, 20 A. L. R. 678

"The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the con-

trol of the employer he is a servant; if not under such control, he is an independent contractor." 14 R. C. L. 67.

These general statements as to what constitutes an independent contractor must be accepted with the modification that the status of independent contractor is not affected by the mere fact that the employer may supervise and direct in matters necessary to a faithful performance of the contract. Such are the holdings of this court in the cases reviewed.

Counsel also refer us to the following definitions of both employés and independent contractors as stated by the court in *Kelley's Dependents* v. *Hoosac Lumber Co.*,    2 95 Vt. 50, 113 A. 818:

"If under the contract the party for whom the work is being done may prescribe, not only what the result shall be, but also may direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employé. But, if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employé, but an independent contractor. So the master test is the right to control the work. And it is this right which properly differentiates service from independent employment. It is to be observed that actual interference with the work is unnecessary—it is the right to interfere that determines. *Tuttle* v. *Embury-Martin Lumber Co.*, 192 Mich. 385, 158 N. W. 875, Ann. Cas. 1918C, 664; *Knicely* v. *West Virginia Midland R. Co.*, 64 W. Va. 278, 61 S. E. 811, 17 L. R. A. (N. S.) 370; *Franklin Coal & Coke Co.* v. *Industrial Co.* (Ill.) 129 N. E. 811."

We have no fault to find with this statement when construed in connection with the former decisions of this court. We especially concur in the closing sentence of the quotation, that 'it is to be observed that actual interference with the work is unnecessary—it is the right to interfere    3 that determines." That is to say, the contract itself determines the relation, not the authority, that may be assumed by the employer in the progress of the work.

Much appears in the evidence, especially in the testimony of Mr. Tolhurst, the president of the board, to the effect that the relation of Clark to the district was the same as that of "any other teacher." A simple suggestion in this connection will expose the fallacy of such contention: Could a teacher

of the school employed by the board step aside and engage
another teacher to take his place without the approval of the
board? The question itself suggests the answer. And yet
the entire testimony of the president, who was the principal
witness for petitioner, seems to have been based upon the
untenable proposition. He seems to have been obsessed with
the theory that the relation of teacher to the board was an
infallible test of the relation of Clark.

In our opinion, the very crux of the case is involved in the
idea that an independent contractor can employ others to do
the work and accomplish the contemplated result with-
out the consent of the contractee, while an employé        4
cannot substitute another in his place without the
consent of his employer. Let us suppose, for instance,
that the engineer of the railroad had been killed in the
collision, instead of Clark and Ludlow, and that his death
would have been caused by their negligent and reckless driv-
ing, under the undisputed evidence in this case would the
school district be responsible for the injury? Again, we are
of opinion the question suggests the answer. It must be con-
ceded that this is an infallible test.

An examination of the rules formulated by the board,
which for convenience we have quoted in this opinion, dis-
closes nothing tending to modify or change the terms of the
contract. They may be considered as in the nature of specifi-
cations, and, in our opinion, are clearly within the purview
of the contract. The purpose and intention of the contract
was to transport the school children safely, comfortably, and
in an orderly manner to and from certain designated points.
It was certainly implied in the contract that the truck
should be driven at a reasonable rate of speed; that it should
be maintained at a comfortable temperature and kept in
reasonably good repair; that it should pick up school chil-
dren, especially at designated places, between the starting
points and the school, and that it should be subject to call
for any school activity in which the whole school was con-
cerned, and, furthermore, that the driver should see that the
school children conducted themselves in an orderly manner

while in the car, for this was necessary to insure their safe transportation. All of these, in the opinion of the court, were clearly implied in the contract, whether expressly stated or not. These were the matters and the only matters covered by the rules. Even if it be conceded that holding the truck for the accommodation of school children attending a school activity was not implied in the contract, or covered by the rules, how does that affect the case? If Clark perhaps in a spirit of generosity saw fit, upon request to hold his truck a few minutes or a few hours to accommodate the children attending the game, why should that convert him into an employé, if in fact he was an independent contractor?

In the opinion of the court, the contention of petitioner is clearly devoid of merit.

The award of the Commission is affirmed, without costs.

FRICK, J., concurs.

CHERRY, J., concurs in the judgment.

GIDEON, C. J. I concur in the order affirming the award of the Commission. I am unable, however, to agree that the following statement in the opinion is the guide provided by the statute in determining who is and who is not an independent contractor. The language of the opinion referred to is as follows:

"In our opinion, the very crux of the case is involved in the idea that an independent contractor can employ others to do the work and accomplish the contemplated result without the consent of the contractee, while an employé cannot substitute another in his place without the consent of his employer. Let us suppose, for instance, that the engineer of the railroad had been killed in the collision, instead of Clark and Ludlow, and that his death would have been caused by their negligent and reckless driving, under the undisputed evidence in this case would the school district be responsible for the injury? Again, we are of opinion the question suggests the answer. It must be conceded that this is an infallible test."

The applicant before the Industrial Commission sought to recover under the third paragraph of subdivision 2 of section 3110, Comp. Laws Utah 1917, as amended by chapter 63,

Laws Utah 1919. That paragraph undertakes to define what relationship between the contractor and employer shall constitute such contractor an independent contractor or an employé within the meaning of those terms as used in that subsection. Whether the contractor is an employé or an independent contractor within the meaning of the subsection depends upon the fact of whether the employer retains supervision or control over the work which the contractor has undertaken to do. It is not dependent upon who has the right or authority to employ or discharge workmen engaged to do the work stipulated to be done by the terms of the contract. The language of the subsection is:

"Then such contractor, and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this section, employés of such original employer."

It is clearly inferable, in my judgment, from the language quoted, that the subcontractor, regardless of whether the employer has retained control or supervision of the work, has the right to employ such persons, without the consent of the employer, as he may choose. It would logically follow that the contractor has the right to discharge such employés. In other words, the question of who has the right to employ workmen is in no sense controlling in determining whether a contractor is an independent contractor or an employé under the provisions of said subsection. Neither do I think the question of whether the school board in this case would have to respond in damages because of the negligence of the driver of the truck controlling, nor could it in any way affect the relationship between the employer and contractor in determining whether such contractor was an employé. It is not the purpose of that subsection to attempt to define under what state of facts a principal or employer might become liable for the negligence of his contractor or his employé. The paragraph of the subsection to which reference is made will be found set out in full in the opinion of this court in *Angel* v. *Ind. Comm.*, 64 Utah, 105, 228 P. 509.

STRAUP, J. I concur in the result. The meaning of "independent contractor" in the act is not expressed as clearly

as it might be. The term ''independent contractor'' has a well-defined meaning in the adjudicated cases, and is well understood. An independent contractor, is one who has entered into a contract or upon employment to render service or do work for another, according to his own method, means, and manner of doing the work, and without being subject to the control, direction, or supervision of such other, except as to the result of the work or service. *Dayton* v. *Free,* 46 Utah, 277, 148 P. 408. I think the Legislature intended to express the same thought. The dominant factor, as expressed in the act, is that the performance or execution of the work must be independent of the employer, the contractor must not be under his control; and must be ''subordinate to the employer only in effecting a result in accordance with the employer's design.'' Now, in determining, in a given case, the relation in such particular of the person or association, I think it important to consider, among other things, the element of whether the contractor or the employer hired, or had the right to hire or employ, the persons engaged about the work or service, and whether they in the performance of it were subject to the control or direction of the one or the other. I think such a very important element. Nevertheless, I do not think it is, in and of itself, the determinative factor or element. Whether the proprietor or employer reserved or exercised the right to superintend, direct, or control the work, not only with respect to result, but also as to the method and means by which the result was to be accomplished, there should be considered, not only the question of whether the contractor or the employer employed, directed, and controlled the persons about the work, but also all other facts and circumstances tending to show whether the employment or engagement of the contractor was independent or otherwise. So considering the record I think Clark was an independent contractor.